In re TRAFALGAR
ASSOCIATES, Debtor,

SAVOY RECORDS, INC., Plaintiff,

v.

TRAFALGAR ASSOCIATES, Defendant,

ALPHA RICHARD CORP., Plaintiff,

v.

TRAFALGAR ASSOCIATES, Defendant.

Bankruptcy No. 84 B 11602.
Adv. Nos. 85–5575A, 85–5576A.

United States Bankruptcy Court,
S.D. New York.

Sept. 30, 1985.

Golenbock & Barell by Robert Goodman, Peter D. Raymond, New York City, for debtor.

Elliott H. Pollack, New York City, for Savoy Records.

Glauberman & Kessler by Robert L. Rotmil, New York City, for Alpha Richard Corp.

MEMORANDUM DECISION ON MOTIONS FOR SUMMARY JUDGMENT BY SAVOY RECORDS INC. AND ALPHA RICHARD CORP.

TINA L. BROZMAN, Bankruptcy Judge.

By motion dated May 24, 1985, Savoy Records, Inc. ("Savoy") seeks summary judgment against Trafalgar Associates ("Trafalgar") in the amount of $12,385.67 representing a security deposit allegedly tendered in connection with a lease agreement and the establishment of an interest bearing escrow account pending the determination of the adversary proceeding. Similarly, Alpha Richard Corp. ("Alpha"), by motion dated May 29, 1985, seeks summary judgment in connection with its own adversary proceeding for the return of both a security deposit and advance rental monies totalling $22,176.00 and for a declaratory judgment that the debt is nondischargeable.

The factual context in which these disputes arise is not new to this court. In an opinion issued June 12, 1985, the court denied Savoy's motion to lift the automatic stay to proceed against Trafalgar in state court because of Savoy's failure to demonstrate the cause necessary for that relief. During the pendency of that motion, both Savoy and Alpha commenced adversary proceedings against Trafalgar for the return of their security deposits and advanced rental monies. Reference is made to this court's June 12, 1985 opinion for a detailed account of the relevant facts which, in summary fashion, are as follows:

Trafalgar is a New York limited partnership with a long-term leasehold estate in the land and building situated at 1674 Broadway, New York, New York and is engaged in the business of subleasing those premises to commercial tenants. From November 1982 through August 1984, the managing general partner of Trafalgar was an entity known as 1674 Corporation, the principal of which was one Herbert L. Handman. On August 15, 1984, 1674 Corporation resigned as managing general partner of Trafalgar and SFT Holding Corporation ("SFT") took its place. At the time that SFT was substituted as managing general partner, the premises were being operated by Saul Rudes, a receiver appointed by the New York State Supreme Court at the instigation of Trafalgar's first leasehold mortgagee, National Westminster Bank, U.S.A., which had commenced a foreclosure action on its mortgage. Mr. Rudes operated the premises until November 16, 1984, when Trafalgar filed its chapter 11 petition.

Both Savoy and Alpha tendered security deposits and Alpha, advance rent as well, to Trafalgar pursuant to leases under which Trafalgar was required to complete certain renovations on the leased premises. That work was apparently never complet-

ed. Neither Savoy nor Alpha took possession.

Savoy and Alpha essentially argue that section 7–103 of the New York General Obligations Law imposes a statutory trust on their security deposits and advances, removing them from the realm of estate assets.[1] Both plaintiffs submitted copies of their checks which reflect that their monies were deposited into Trafalgar's account. Trafalgar did not challenge the amounts of the security deposits and advances because its attempts to obtain an accounting of funds from the former receiver, Saul Rudes, were unsuccessful. It maintains, however, that the present bank account balance does not contain those funds but contains only current monies received which are exhausted on a monthly basis. In any event, there is no dispute that Trafalgar possesses insufficient funds to pay both Savoy and Alpha and that there are other lessees of Trafalgar who find themselves in the same predicament vis-a-vis this estate.

### DISCUSSION

### I

In ruling upon a motion for summary judgment, the task before the court is not to resolve factual issues but to determine if there exist genuine issues of material fact. In the absence of such issues, the court is to order summary judgment if the movant is, as a matter of law, entitled to same. *Teitelbaum v. Equitable Handbag Co., (In Outlet Department Store, Inc. )*, 49 B.R. 536 (Bankr.S.D.N.Y.1985); *Nahtel Corporation v. West Virginia Pulp & Paper Co.*, 141 F.2d 1, 2 (2d Cir.1944); *see Chappell & Co. v. Frankel*, 367 F.2d 197, 204 (2d Cir.1966) (en banc).

Bankruptcy Code section 541(a)(1) defines the bankrupt estate as "comprised of . . . all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Property in which the debtor holds "only legal title and not an equitable interest," 11 U.S.C. § 541(d), however, is beyond the pale of the estate. *Varon v. Salomon (In re Martin Fein & Co.)*, 43 B.R. 623, 626 (Bankr.S.D.N.Y.1984). But evidence of the existence of a trust, be it statutorily or constructively imposed, is insufficient, standing alone, to entitle the beneficiary to remove from the estate the property which he claims. Unless the beneficiary can, and does, trace the trust res he will be relegated to the status of a general unsecured creditor. *Selby v. Ford Motor Company*, 590 F.2d 642, 649 (6th Cir.1979); *Elliott v. Bumb*, 356 F.2d 749, 754 (9th Cir.1966); *Sonnenschein v. Reliance Insurance Company*, 353 F.2d 935 (2d Cir.1965). Collier explains the doctrine of tracing in the bankruptcy context in the following terms:

Once the trust relationship has been established, one claiming as a cestui que trust thereunder must identify the trust fund or property in the estate, and, if such fund or property has been mingled with the general property of the debtor, sufficiently trace the trust property. If the trust fund or property cannot be identified in its original or substituted form, the cestui becomes merely a general creditor of the estate. The same result will accrue where the trust property has been disposed of or dissipated in such manner as to leave nothing in its place. If the claimant succeeds in making the requisite proof, it then devolves upon the bankruptcy trustee to distinguish between what belongs to the estate and what belongs to the cestui que trust.

The situation frequently occurs where the trust funds have been traced into a

---

1. N.Y. General Obligations Law § 7–103 provides in pertinent part that "[w]henever money shall be deposited or advanced on a contract or license agreement for the use or rental of real property as security for the performance of the contract or agreement or to be applied to payments upon such contract or agreement when due such money with interest accuring thereon, if any, until repaid or so applied, shall continue to be the money of the person making such deposit or advance and shall be held in trust by the person with whom such deposit or advance shall not be mingled with the personal moneys or become an asset of the person receiving the same, but may be disposed of as provided in section thirteen hundred two-a of the penal law."

general bank account of the debtor. The following general principles have been applied. The bankruptcy court will follow the trust fund and decree restitution where the amount of the deposit has at all times since the intermingling of funds equaled or exceeded the amount of the trust fund. But where, after the appropriation and mingling, all of the moneys are withdrawn, the equity of the cestui is lost, although moneys from other sources are subsequently deposited in the same account. In the intermediate case where the account is reduced to a smaller sum than the trust fund, the latter must be regarded as dissipated, except as to the balance, and funds subsequently added from other sources cannot be subjected to the equitable claim of the cestui que trust. If new money is deposited before the balance is reduced, the reduction should be considered to be from the new money and not from the monies held in trust. This analysis may be referred to as the lowest intermediate balance test.

4 Collier, *Bankruptcy*, ¶ 541.13, at 541–72 to 73 (15th ed. 1985) (footnotes omitted).

Trafalgar has here alleged that the monies obtained from Savoy and Alpha and deposited into Trafalgar's general bank account by prior management were wholly dissipated or to show when those monies were dissipated.

■ No attempt was made by either Savoy or Alpha to trace their monies beyond showing that the checks were tendered. Neither was evidence offered to the court by Trafalgar to support its contention that the monies were wholly dissipated or to show when those monies were dissipated. Accordingly, a genuine issue of material fact exists, and summary judgment must be denied. *See In re Gottfried Baking Co.*, 312 F.Supp. 643 (S.D.N.Y.1970) (district court remanded case to the bankruptcy court to determine whether a trust was recreated after a dissipation of trust funds, constituting a tenant's security deposit.)

## II

■ Alpha requests this court to declare Alpha's debt nondischargeable pursuant to section 523(a)(4) of the Bankruptcy Code which renders nondischargeable debts "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." A request for such relief is premature at this time. Whether Trafalgar will obtain a discharge hinges on whether and what type of a plan is confirmed. *See* 11 U.S.C. § 1141(d)(3). Since no plan has yet been proposed, a declaration of nondischargeability cannot be made. Alpha's reliance on section 523 as support for nondischargeability is misplaced because that section on its face applies only to individual debtors, and not to limited partnerships such as Trafalgar. 11 U.S.C. § 523(a); *In re Hooton Company*, 43 B.R. 389 (Bankr. N.D.Ala.1984). *See also Yamaha Motor Corp. v. Shadco, Inc.*, 762 F.2d 668, 13 B.C.D. 315 (8th Cir.1985) (section 523(a) is applicable to individual debtors and will not be read to include the corporate debtor). Accordingly, that portion of Alpha's motion requesting declaratory judgment that the debt is nondischargeable is denied.

## III

Although not so styled, Savoy's request for the creation of an escrow account is a request for one of two provisional remedies, either a mandatory injunction or an attachment. Savoy has not made the requisite showing for either type of relief.

■ In order to obtain a preliminary injunction in this Circuit the moving party must establish (1) the threat of irreparable harm in the absence of an injunction and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious ground for litigation and a balance of hardships tipping decidedly in its favor. *Buckingham Corp. v. Karp*, 762 F.2d 257, 261 (2d Cir.1985). For a mandatory injunction to issue, the showing must be even stronger. *See Jacobson & Company, Inc. v. Armstrong Cork Company*, 548 F.2d 438, 441 (2d Cir.1977). Here, Savoy has failed to show a likelihood of success on the merits since it has done nothing to trace its funds and has not rebutted Trafalgar's assertion that all of the trust fund monies were dissipated. Neither has it shown a balance

of hardships tipping decidedly in its favor. The policy of bankruptcy is equality of distribution among creditors. *Cunard Steamship Company Ltd. v. Salem Reefer Services AB (In re United Brands Co.),* 773 F.2d 452, 459 (2d Cir.1985). *See also* 3 Collier, *Bankruptcy* § 60.01 at 743 (14th ed. 1977); *Sampsell v. Imperial Paper & Color Corp.,* 313 U.S. 215, 61 S.Ct. 904, 85 L.Ed. 1293 (1941). Since as it does not appear that Savoy will be able to prove its entitlement to a trust res, it will probably be classified as a general creditor. And to allow one general creditor to prevent the debtor from utilizing its cash flow for the benefit of all general creditors would be to work an inequity on those creditors.

■ If Savoy's request for the establishment of an escrow account be termed a request for an attachment, it fares none the better for Savoy has failed to make the requisite showing necessary under applicable New York law. (*See* F.R.B.P. 7064 which makes F.R.C.P. 64 applicable to adversary proceedings which, in turn, defers to state law.) Under N.Y.C.P.L.R. § 6201, the New York statute which establishes the grounds for attachment, Savoy, at best, could seek an attachment under subsection 3, allowing for an attachment when:

> the defendant with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts.

Savoy has failed however to establish Trafalgar's "intent to defraud ... or frustrate". That element is not lightly inferred; it must be supported by evidentiary facts as opposed to mere conclusions. *Brastex Corp. v. Allen Intern, Inc.,* 702 F.2d 326, 331 (2d Cir.1983). In any event, insofar as Savoy has not even attempted to trace the funds, it has not demonstrated a probability that it will succeed on the merits of its action as required by N.Y.C.P.L.R. 6212(a). *See Tampimex Oil Limited v. Latina Trading Corporation,* 558 F.Supp. 1201 (S.D.N.Y.1983). Accordingly, Savoy's request for the creation of an interest-bearing escrow account is denied.

*Conclusion*

The motions for summary judgment, for a declaration of nondischargeability and for the creation of an escrow are denied. However, since F.R.C.P. 56(d), made applicable to adversary proceedings by virtue of F.R.B.P. 7056, directs this court on denial of a motion for summary judgment to ascertain what material facts exist without substantial controversy and to make an order specifying those facts, including the extent to which the amount of damages is not in controversay and, further, since Trafalgar has failed to challenge the assertions of Alpha and Savoy that they tendered checks in the aggregate amounts of $22,176.00 and $12,385.67, respectively, which were deposited into Trafalgar's general bank account, those facts are not in controversy.

SETTLE separate orders with respect to each adversary proceeding.