In re VICHELE TOPS,
INCORPORATED,
Debtor.

LANE BRYANT,
INCORPORATED, Plaintiff,

v.

VICHELE TOPS, INCORPORATED,
Debtor, Defendant.

Bankruptcy No. 184–41862.
Adv. No. 185–0028.

United States Bankruptcy Court,
E.D. New York.

June 13, 1986.

Platzer & Fineberg, New York City, Trustee.

Nitkin, Alkalay, Handler & Robbins, New York City, for applicant Vichele Tops, Inc.

## OPINION

MARVIN A. HOLLAND, Bankruptcy Judge:

This adversary proceeding seeks an order permitting the recovery of $28,722.60 claimed to be held by the debtor in constructive trust for the plaintiff as the result of a mistaken payment. We hold that the plaintiff is not entitled to recover.

## FACTS

In October of 1984 the debtor received from Lane Bryant Corporation ("Lane Bryant") a check for $28,722.60 payable to the order of Vichele Financial Ltd./Bon Jour Fashion, and deposited it into its regular account at Bank Leumi. Both parties agree that the check had been sent by mistake and that the debtor never had any right to such payment. The plaintiff's pre-petition attempts to recover these funds from the defendant were unsuccessful.

On December 11, 1984 an involuntary Chapter 7 petition was filed against Vichele Tops. Although the estate now consists of cash in excess of $50,000, only $229.93 are funds originally contained in the debtor's bank accounts, while $52,120.76 represents the net proceeds from the trustee's sale of

the debtor's machinery and equipment. What is not clear is whether any of the proceeds of the Lane Bryant check were used to purchase the debtor's machinery and equipment. In fact, neither party knows what happened to the proceeds of the $28,722.60 check after its deposit.

Lane Bryant argues that the debtor's estate is burdened with a constructive trust to the extent of $28,722.60 because by taking control of the check and using its proceeds the debtor was unjustly enriched by that amount. The debtor resists on the grounds that the funds apparently cannot be traced.

## ISSUE

Should the debtor's estate be burdened with a constructive trust in favor of the plaintiff?

## DISCUSSION

■ A constructive trust arises where a person acquires or retains property in violation of a fiduciary duty owed to the true owner of the property. *Restatement of Restitution,* § 190 (1937). Such a trust acknowledges an equitable duty to convey property to another because further retention of the property would unjustly enrich[1] the present holder. *In re Wyatt,* 6 B.R. 947, 950 (Bkrtcy.E.D.N.Y.1980). The elements of a constructive trust are (1) the existence of a confidential or fiduciary relationship; (2) an expressed or implied prom-

ise; (3) a transfer made in reliance on such promise; (4) an enrichment; and (5) proof of a *res* to which the trust may attach. *In re Branch Motor Exp. Co.,* 51 B.R. 146, 148 (Bkrtcy.S.D.N.Y.1985) (citing *Matter of Weiss Securities, Inc.,* 605 F.2d 590, 597 (2d Cir.1978); *Matter of U.S.N. Co., Inc.,* 32 B.R. 675 (Bkrtcy.S.D.N.Y.1983); *Bankers Sec. Life Ins. v. Shakerdge,* 49 N.Y.2d 939, 940, 428 N.Y.S.2d 623, 624, 406 N.E.2d 440 (1980) *Sharp v. Kosmalski,* 40 N.Y.2d 119, 386 N.Y.S.2d 72, 351 N.E.2d 721 (1976)).

■ 11 U.S.C. § 541(a)(1) defines "property of the estate" as including "all legal or equitable interests of the debtor in property as of the commencement of the case." When a debtor has only a bare legal interest, then only that limited interest is property of the estate. 11 U.S.C. § 541(d). If prior to the order of relief the debtor was holding property subject to a constructive trust, then the estate acquires merely naked legal title to the property subject to that constructive trust. *In re N.S. Garrott & Sons,* 772 F.2d 462, 467 (8th Cir.1985); *In re Wyatt,* 6 B.R. at 953.

■ Were the court to hold that the estate is now burdened by a constructive trust in favor of the plaintiff, the time that the trust originated becomes significant. If the trust came into being at the time of the negotiation of the check, then the debtor's pre-petition acquisition of its proceeds

---

**1.** While it is true that the debtor was enriched by the amount of Lane Bryant's mistaken check, and while it is also true that this enrichment was unjust, it does not necessarily follow that the debtor was unjustly enriched at Lane Bryant's expense. "Unjust enrichment" means something more than enrichment which is not just. "Unjust enrichment" is a term of art, a legal doctrine invoked in legal cases to prevent inequitable results. This doctrine is based upon the "general principle that one person should not be permitted unjustly to enrich himself at the expense of another, but should be required to make restitution of or for property or benefits received, retained or appropriated, where it is just and equitable that such restitution be made, and where such action involves no violation or frustration of law or opposition to public policy, either directly or indirectly." *Tulalip Shores, Inc. v. Mortland,* 9 Wash.App. 271, 274–

75, 511 P.2d 1402, 1404 (1973). The term "unjust enrichment" is a modern designation for the older doctrine of "quasi contract." *Martin v. Bozeman,* 173 So.2d 382, 385–87 (La.Ct.App. 1965). Recovery under theory of "unjust enrichment" requires proof of five elements: (1) [a]n enrichment, (2) [a]n impoverishment, (3) [a] connection between the enrichment and the impoverishment, (4) [a]bsence of a justification for the enrichment and impoverishment, and (5) [a]n absence of a remedy provided by law. *A & A Metal Bldgs. v. I–S, N.D., Inc.,* 274 N.W.2d 183, 189 (N.D.1978). "Unjust enrichment" is but one example of a legal phrase that takes on a meaning separate, independent and indeed somewhat greater than the meanings of the individual words which comprise that phrase. Simply put, in legal phraseology the whole may be more than the sum of its parts.

would be subject to plaintiff's outstanding equitable interest. The debtor's estate, created by the filing of the involuntary petition, would also be subject to the claimant's equitable interest in the property. If, however, the trust arises only by virtue of the court's recognition of its existence, then the present creation of such trust would constitute a post-petition transfer (*See* 11 U.S.C. § 101(48)) subsequent, and therefore subordinate, not only to supervening interests but also to any of the trustee's applicable avoiding powers.

There seems to be little uniformity in this area. The court in *In re Independent Clearing House Co.*, 41 B.R. 985 (Bkrtcy. D.Utah 1984) opined that "[c]onstructive trusts do not arise because of the expressed intent of the parties; they are created by courts of equity and do not come into existence until declared by a court as a means of affording relief." *Id.* at 999 (citing G. Bogert HANDBOOK ON THE LAW OF TRUSTS, § 77 at 208 (1973) and *Restatement of Restitution*, § 160 (1937), among other authorities).

On the other hand, the court in *United States v. Fontana*, 528 F.Supp. 137 (S.D.N.Y.1981) stated that

" '[w]here the title to property is acquired by one person under such circumstances that he is under a duty to surrender it, a constructive trust immediately arises.... It would seem that there is no foundation whatever for the notion that a constructive trust does not arise until it is decreed by a court.' " *Id.* at 146 (quoting 5 Scott, Trusts [3d ed.], § 462.4).

The *Fontana* court then holds that New York law provides that a constructive trust is created at the time of the occurrence of the circumstances giving rise to the duty to surrender the property. 528 F.Supp. at 146.

The Legislative history to 11 U.S.C. § 541, in stating that property held in constructive trust is excluded from the estate seems to indicate that Congress similarly viewed the creation of a constructive trust as occurring at the time of the circumstances giving rise to the duty to surrender the property, a pre-petition event. *See* House Report No. 95–595, 95th Congr., 1st Sess., 367–8 (1977), *Reprinted in* (1978) U.S.Code Cong. & Ad.News 5787, 6323, 6324; Senate Report No. 95–989, 95th Cong., 2d Sess. 82–3 (1978), *Reprinted in* (1978) U.S.Code Cong. & Ad.News 5868). Any other interpretation of the Legislative history [2] would require a pre-petition judicial imposition of the trust as a prerequisite to its enforcement against the estate. The *Fontana* rule is the appropriate one to follow in light of the facts herein presented.[3]

As a condition to the recognition that the debtor's original acquisition of the fund was subject to a constructive trust, the claimant must be able to show that the funds presently on hand are either the same funds that were wrongfully acquired or are the traceable proceeds thereof. *In re Western World Funding, Inc.*, 52 B.R. 743, 790 (Bkrtcy.D.Nev.1985).

"When property of the estate is alleged to be held in trust, the burden rests upon the claimant to establish the original trust relationship. He must prove his

---

**2.** *See* for example the following language:.

Situations occasionally arise where property ostensibly belonging to the debtor will actually not be property of the debtor, but will be held in trust for another. For example, if the debtor has incurred medical bills that were covered by insurance, and the insurance company had sent the payment of the bills to the debtor before the debtor had paid the bill for which the payment was reimbursement, the payment would actually be held in a constructive trust for the person to whom the bill was owed. *See* House Report No. 95–595, 95th Cong., 1st Sess., 367–8 (1977), *Reprinted in*

(1978) U.S.Code Cong. & Ad.News 6324; Senate Report No. 95–989, 95th Cong., 2d Sess. 82–3 (1978), *Reprinted in* (1978) U.S.Code Cong. & Ad. News 5868.

If the debtor holds bare legal title or holds property in trust for another, only those rights which the debtor would have otherwise had emanating from such interest pass to the estate under section 541. 124 Cong.Rec.H 11,-096 (Sept. 28, 1978); S 17,413 (Oct. 6, 1978).

**3.** This holding obviates the need for any inquiry into the possible avoidability of the transfer.

title, identify the trust fund or property, and where the fund or property has been mingled with the general property of the debtor, the claimant must sufficiently trace the property." *4 Collier on Bankruptcy,* ¶ 514.13 at 541–70 through 541–71.

It is not sufficient for the plaintiff merely to assert that another has been unjustly enriched without also being able to identify a specific trust res. *In re Hurricane Elkhorn Coal Corp. II,* 19 B.R. 609, 613 (Bkrtcy.W.D.Ky.1982). Nor is the claimant's burden satisfied by an allegation that the wrongfully acquired property became a part of the trustee's general assets. *In re Western World Funding Inc.,* 52 B.R. at 790. Rather, the claimant must allege and establish the traceability of the assets before a court will recognize a constructive trust. *Id.*

■■■ Here the claimant concedes its inability to satisfy such burden; no one can adequately account for the whereabouts of the $28,722.00. Since the plaintiff is unable to trace these funds, the court cannot recognize a constructive trust and Lane Bryant's status is therefore that of a general unsecured creditor.

Even if the plaintiff had been able to satisfy its burden of tracing the funds, this court would be reluctant to recognize the trust because such action would work an injustice on all the creditors not a party to this proceeding. The general creditor body should not be prejudiced by the negligence of Lane Bryant. "[T]he bankruptcy court in passing on allowance of claims sits as a court of equity.... In the exercise of its equitable jurisdiction the bankruptcy court has the power to sift the circumstances surrounding any claim to see that injustice or unfairness is not done in administration of the bankrupt estate." *Pepper v. Litton,* 308 U.S. 295, 307–08, 60 S.Ct. 238, 245–46, 84 L.Ed. 281 (1939).

Had this proceeding not arisen in a Title 11 case, we would not have many of the difficulties herein presented. The defendant has been enriched at the expense, and perhaps through the neglect, of the plaintiff. As between the debtor and the plaintiff, the latter is certainly the party more entitled to the funds. Limiting our perspective exclusively to these two parties, however, would be to ignore the broader function of this court.

Law suits are proceedings which seek to balance rights, duties, equities, and entitlements. While courts, in nonbankruptcy matters, consider primarily the interests of the parties before it, a court of bankruptcy has a broader scope. It must interpret its enabling legislation in the light of its purpose. *See Commissioner v. Engle,* 464 U.S. 206, 217, 104 S.Ct. 597, 604, 78 L.Ed.2d 420 (1984); *Chapman v. Houston Welfare Rights Org.,* 441 U.S. 600, 608, 99 S.Ct. 1905, 1911, 60 L.Ed.2d 508 (1979).

■■■ Quintessential to the philosophy upon which the Bankruptcy Code is founded is the principle of equality of distribution.[4] *Kothe v. R.C. Taylor Trust,* 280 U.S. 224, 227, 50 S.Ct. 142, 143, 74 L.Ed. 382 (1930); *In re Kessler,* 23 B.R. 722, 725 (Bkrtcy.S.D.N.Y.1982). Therefore, the interests of the general creditor body are always before the court.[5] This is a Chapter 7 case; any relief granted by the plaintiff will come out of the pockets of the creditors, not the debtors. To permit the plaintiff to profit from its own negligence at the expense of those who have dealt with the debtor in a more diligent fashion would be to ignore the purpose of the Bankruptcy Code.

"A court of equity in decreeing a constructive trust is bound by no unyielding formula. The equity of the transaction must shape the measure of relief." *Beatty v. Guggenheim Exploration Co.,* 225 N.Y. 380, 389, 122 N.E. 378, 381 (S.D.N.Y.1919).

**4.** *See,* for instance, 11 U.S.C. §§ 547, 550, 726, 1123(a)(4), 1322(a)(3).

**5.** Indeed, that is one of the reasons for the extent to which judicial supervision over the activities of the debtor is implicitly authorized under 11 U.S.C. §§ 363, 364, 365 and 554.

The relief sought by plaintiff is denied. Any claim which it may timely file will be allowed only as unsecured.

A separate order will issue dismissing this proceeding.