In the Matter of COMPROP INVEST-
MENT PROPERTIES, LTD., Debtor.

Bankruptcy No. 87–5399–8B1.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Dec. 2, 1987.

Ellen Kast Kaplan, Tampa, Fla., for debtor.

Gregory Mierzwinski, Tampa, Fla., for First Texas.

Robert Soriano, Tampa, Fla., for Xenon, Inc.

ORDER ON FIRST TEXAS SAVINGS AS-
SOCIATION'S MOTION FOR PRO-
HIBITING USE OF CASH COLLAT-
ERAL; DEBTOR'S MOTION FOR
USE OF CASH COLLATERAL; AND
FIRST TEXAS' SAVINGS ASSOCIA-
TION'S MOTION FOR SETOFF

THOMAS E. BAYNES, Jr.,
Bankruptcy Judge.

THE MATTERS under consideration in this Chapter 11 case are a Motion to Prohibit Use of Cash Collateral filed by creditor First Texas Savings Association (First Texas), a Motion for Use of Cash Collateral filed by the Debtor, and First Texas' Motion for Setoff. Prior to the hearing on these motions, a Motion for Relief from Automatic Stay was heard at a preliminary hearing. The Court reviewed the motions and the record and heard arguments of counsel, and it appears all motions focused upon 1.1 million dollars which is presently being held in an account in the Debtor's name at First Texas Savings Association. The undisputed facts appear from the record to be as follows:

The Debtor is a Florida limited partnership which constructed a specialty shop mall known as "North Park Center." The general partner is Gulf South Resources, Inc. which owns one percent of the Debtor. Mr. and Mrs. Harvey Estes are the limited partners and own ninety-nine percent of the Debtor and one hundred percent of the general partner, Gulf South Resources, Inc.

In 1985, First Texas and the Debtor entered into a loan transaction for the construction of North Park Center. The loan was partially secured by a 1.1 million dollar letter of credit in favor of First Texas. Initially, the letter of credit requirement was fulfilled by Atlantic National Bank of

Florida in favor of First Texas. Subsequently, on December 20, 1986, the letter of credit was replaced by a letter of credit from Merrill Lynch to First Texas as the beneficiary. While Merrill Lynch issued the letter of credit for the account of the Debtor, the letter was funded by Harvey Estes' personal funds.

In March, 1987, First Texas, claiming a default by the Debtor, negotiated the Merrill Lynch letter of credit. The funds were placed in a money market account in the name of the Debtor. In fact, First Texas had Mr. and Mrs. Estes sign a signature card for that account, although the money could not be withdrawn by the Debtor or the Estes.

Mr. Estes, after receiving the signature card, communicated with First Texas, and requested it set up eleven accounts of $100,000 each. These accounts were set up separately to allow the FSLIC insurance to take effect to its maximum amount of $100,000 on each account rather than risk the 1.1 million dollars in one account if First Texas Savings Bank went defunct. In this letter by Mr. Estes, the accounts were to be set up not only in the name of the Debtor, but most of the accounts were to be in the names of other individuals, including his wife and child. Later, Mr. Estes filed a financial statement with First Texas whereby he specifically set forth that the proceeds from the letter of credit now held in a First Texas money market account was his personal asset. The Debtor filed a Chapter 11 Voluntary Petition on October 6, 1987.

First Texas maintains the 1.1 million dollars is not property of the estate under Section 541 of the Bankruptcy Code. It argues that even though the funds in the money market account are directly related to the construction loan to the Debtor, at all times First Texas considered the funds to be Harvey Estes'. The Debtor was not entitled to utilize the funds in the money market account. First Texas maintains that if Harvey Estes found a substitute lender for the North Park Center construction project, it would have either returned the funds to Mr. Estes or transferred the funds to the new lender as additional collateral.

In opposition, the Debtor argues the 1.1 million dollars is property of the estate and is cash collateral under Section 363 of the Bankruptcy Code. It maintains Mr. Estes lent the 1.1 million dollars to the Debtor although Estes admits no promissory notes or other documents support any such loan. The Debtor requests this Court authorize the use of the cash collateral for road construction and completion of North Park Center. First Texas contends even if this Court determines the funds to be property of the estate, First Texas has a right of setoff under Section 553 of the Code.

It appears no matter how this Court characterizes the 1.1 million dollars, the funds are not available to the Debtor. If the Court deems the funds to belong to Mr. Estes, thus outside the estate, then this Court lacks jurisdiction to control the disbursement of those funds. Rather, the control of the funds will be an issue to be handled between First Texas and Mr. Estes. If the funds are considered property of the estate and cash collateral, then the primary issue to be resolved is setoff by First Texas.

Keeping these facts in mind, this Court must first address the issue of whether the funds constitute property of the estate as that term is defined by the Bankruptcy Code. Section 541(a) provides the estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." The money market account is in the name of Comprop Investment Properties, Ltd. The Debtor's federal tax identification number was used by First Texas for reporting purposes. Mr. and Mrs. Estes are listed on the signature card of the account. Thus, despite the fact that the parties view the ownership status differently, it could be argued the Debtor has at least a legal interest in the funds in the money market account. Title 11 U.S.C., Section 541(d). *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983); *In re Vichele Tops, Inc.*, 62 B.R. 788 (Bankr.E.D.N.Y. 1986).

When First Texas received the money from Merrill Lynch, it did not receive an asset which belonged to the Debtor. As a

letter of credit, the funds were not property of the estate. *Postal v. Smith*, 522 F.2d 791 (9th Cir.1975). Once the letter of credit was negotiated by First Texas, there is no evidence to support a different characterization of the funds. However, the money belonged to Harvey Estes. While the Debtor contends Harvey Estes lent the 1.1 million dollars to the Debtor, there are no loan documents in evidence to substantiate the loan. In fact, the assets provided to Merrill Lynch to facilitate the letter of credit were the personal assets of Harvey Estes. Thus, even though the Debtor is the record owner of the funds in the accounts, equitable interest in the property does not lie with the Debtor. The issue of the ownership of these funds is outside the parameters of this Court's jurisdiction since that issue is between Estes personally and First Texas.

As to setoff, Section 553(a) of the Bankruptcy Code provides:

Except as otherwise provided in this Section and in Section 362 and 363, this Title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this Title against the claim of such creditor against the debtor that arose before the commencement of the case.

Other courts have clearly determined the deposit of money in a financial institution becomes the property of that institution and the institution and the depositor form a debtor/creditor relationship regarding those funds. Theoretically, the transaction is one of a loan to the bank wherein there is a promise and obligation of the bank to repay the amount deposited on demand by the depositor debtor. Further, the right of setoff is permissible with respect to these deposits when done in the ordinary and normal course of business. See *Ribaudo v. Citizens National Bank of Orlando*, 261 F.2d 929 (5th Cir.1958); *In re Williams*, 61 B.R. 567 (Bankr.N.D.Tex.1986). The provisions of Section 553 require a mutual debt which has been established in this case. Further, the indebtedness owed by the Debtor to First Texas and the debt owed by First Texas to the Debtor both arose before the commencement of this case. Before

First Texas may have a right of setoff on the 1.1 million dollars, there is a requirement that First Texas seek relief from the automatic stay. The Motion for Relief from Automatic Stay by First Texas was heard subsequent to the motions for use and prohibition of cash collateral and the motion for setoff.

Therefore, the Court finds proceeds of the letter of credit were never property of the Debtor. Even if the funds were considered property of the estate, the setoff rights of First Texas would eliminate the Debtor's right to use of the funds.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED First Texas' motions regarding setoff of funds and relief from automatic stay are granted. First Texas may exercise its rights under its loan documents, or remedies at state law, but shall seek or obtain only an in rem judgment against Debtor regarding the 1.1 million dollar funds. The parties motions regarding utilization of cash collateral are considered moot.