In re Mary M. FAGAN, Debtor.

**AMERICAN MAYFLOWER LIFE INSURANCE COMPANY, Plaintiff,**

v.

**Mary M. FAGAN, Debtor, and Richard L. Stern, Trustee, Defendants.**

Bankruptcy No. 093–70491–511.
Adv. No. 093–7134–511.

United States Bankruptcy Court, E.D. New York.

Dec. 15, 1993.

---

Zinker & Gelfand by Stephen P. Gelfand, Smithtown, NY, for defendant-debtor.

Macco, Hackeling, Stern & Christensen by Richard L. Stern, Huntington, NY, for Chapter 7 trustee.

Lane & Mittendorf by Ralph O. Heavner, New York City, for plaintiff.

### DECISION

MELANIE L. CYGANOWSKI, Bankruptcy Judge.

The central inquiry before this Court is whether a constructive trust should be imposed upon funds that were concededly paid in error to the Debtor prior to the commencement of this Chapter 7 proceeding. This issue arises in the context of motions and cross-motions for summary judgment made by each of the parties to this adversary proceeding.

The initial motion for summary judgment was made by the debtor-defendant, Mary M. Fagan (the "Debtor" or "Fagan"), on the grounds that (a) the adversary proceeding, including the issues and claims raised therein, is time barred pursuant to Rule 4004 of the Federal Rules of Bankruptcy Procedure ("FRBP"); and (b) an award of attorneys' fees and costs should consequently be imposed upon the plaintiff pursuant to FRBP 9011. In response, the plaintiff, American Mayflower Life Insurance Company ("American Mayflower"), cross-moved for summary judgment against the Debtor and the Chapter 7 Trustee on the grounds that (a) a constructive trust should be imposed on the $17,000 in funds returned to American Mayflower pursuant to an Order of the Supreme Court of the State of New York, County of Suffolk (the "State Court"); and (b) a constructive trust should be imposed on additional funds allegedly withheld wrongfully by the Debtor to the extent that they can be traced.

In addition, the Chapter 7 Trustee, Richard L. Stern, Esq., cross-moved for summary judgment against American Mayflower on the grounds that the $17,000 should be returned to the estate as these funds were paid by the Debtor within 90 days prior to the filing of this bankruptcy case. The adverse parties oppose the relief sought by the other.

Oral argument was presented at a hearing held on October 25, 1993, following which the Court reserved decision. The Court's findings of fact and conclusions of law are set forth below.

## FINDINGS OF FACTS

The following material facts are not in dispute.

The Debtors filed a voluntary petition for relief under Chapter 7 on February 18, 1993. In accordance with Section 341 of the Bankruptcy Code, the trustee held a meeting of creditors on April 12, 1993. American Mayflower appeared at the "Section 341" meeting and questioned the Debtor.

The deadline to file a complaint objecting to the discharge of the Debtor or to determine the dischargeability of debts was June 11, 1993. No creditor, including American Mayflower, objected to the discharge of the Debtor or sought a determination as to the dischargeability of any debts owing by the Debtor.

The Court entered an Order granting the Debtor her discharge on July 15, 1993. American Mayflower commenced this adversary proceeding on that same day.

In its complaint, American Mayflower seeks the "reclamation of certain property currently in the hands of the defendants." Clpt. ¶ 4. In particular, American Mayflower alleges that the defendants are "in possession of, or maintain an interest in, certain property of American Mayflower's which has been wrongfully in the possession of the debtor, to wit: $38,592.62 mistakenly paid to debtor by American Mayflower, of which debtor, pursuant to order of the Supreme Court, State of New York, County of Suffolk, returned $17,000 to American Mayflower." *Id.*, ¶ 5.

The mistaken payment arises from a death benefit paid by American Mayflower to the Debtor following the death of her former husband, William J. Fagan, Jr., on April 10, 1991. The insurance policy had originally been taken out by William Fagan in 1968 and provided an initial death benefit in the amount of $45,920 which decreased over 20 years on each anniversary date until the maximum death benefit was no more than $8,000. Pursuant its terms, the Debtor submitted three proofs of the death of William Fagan on a form provided by American Mayflower which indicated that the amount of insurance being claimed was $8,000.

Upon its receipt of the proofs of death from the Debtor, American Mayflower calculated the death benefit payable under the policy and mistakenly used the $45,920 death benefit in effect in 1968 rather than the $8,000 death benefit in effect in 1991. After satisfying an outstanding loan on the policy and crediting interest, American Mayflower issued a check to the Debtor in the sum of $45,125.75. Had American Mayflower calculated the death benefit correctly, the Debtor would have received an adjusted death benefit in the amount of $6,533.13.

The Debtor accepted and negotiated the check issued by American Mayflower on June 18, 1991. American Mayflower did not advise the Debtor of its mistaken overpayment until February 12, 1992, at which time it demanded the immediate return of the $38,592.62 overpayment.

After failing to receive any response, American Mayflower commenced an action in the State Court to recover the sum of $38,592.62 on the equitable grounds of mistake and unjust enrichment. In its State Court complaint, American Mayflower did not seek the imposition of a constructive trust on the funds mistakenly paid to Fagan.

The parties conducted discovery in the State Court action, following which the parties moved for summary judgment. Prior to disposition of the summary judgment motions, the parties entered into an agreement in principle resolving the matter. The settlement faltered, however, and the State Court, by the Honorable Alan D. Oshrin, granted American Mayflower's motion for summary judgment by Order, dated January 21, 1993.

In his decision, Judge Oshrin wrote:

The essential inquiry in an action for unjust enrichment or restitution is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered. In making this determination the Court will ascertain whether a benefit has been conferred on the defendant under a mistake of fact or law; if the benefit still remains with the defendant; if there has been a change of position by the defendant, and whether the defendant's conduct was tortious or fraud-

ulent (see *Manufacturers Hanover Trust Co. v. Chemical Bank,* 160 AD2d 113 [559 N.Y.S.2d 704], supra citing *Paramount Film Distribut. Corp. v. State of New York,* 30 NY2d 415, 334 NYS2d 388[, 285 N.E.2d 695] (1972)).

There is nothing in the record to indicate that any monies expended by the defendant out of the insurance proceeds from the time of receipt of the check in June of 1991 until the first notice of the error in February of 1992 was grounded in tortious or fraudulent conduct. Equity will be served by the defendant's return to the plaintiff the sum of approximately $17,000 remaining of the insurance proceeds presently in the defendant's possession. [footnote 1] Equity may also be served by the defendant's return to the plaintiff of any monies expended out of the insurance proceeds prior to the defendant's receipt of the February 12, 1992 letter.....

The defendant contends without dispute that she is of limited means and that the funeral bill had to be paid from the proceeds of the insurance policy. The defendant states that she cannot make repayment to the plaintiff. The parties have conducted discovery during the pendency of this matter, and the plaintiff has not uncovered any evidence of "high living" on the part of the defendant, nor has the plaintiff uncovered evidence which would indicate that the defendant, in fact, has the means to make lump sum restitution.....

Order of the State Court, Jan. 21, 1993, at 2–3 (Footnote 1 stated: "Upon being advised of the failed attempt at settling this action on January 15, 1993, this Court enjoined the defendant from expending the sum of nearly $17,000 which the defendant acknowledged remained in her possession.").

In her affidavit that was submitted in connection with the cross-motions for summary judgment pending before the State Court, the Debtor stated:

5. I received a letter and check for $45,125.75 from American Mayflower on June 18, 1991. I really didn't know what the death benefit would be, but the letter accompanying the check itemized the policy proceeds, including a loan which had been deducted from the total amount and adding interest, and I assumed their calculations were correct. I had no idea if Bill had made any changes in the policy in the years since our separation in 1975 and divorce in 1985. I endorsed the check and deposited it in my bank account.

6. Shortly after the check cleared I made numerous disbursements, which I could not have afforded to do without the death benefit proceeds.

．　　．　　．　　．　　．

8. In the eight (8) months between the time I received the check and the time of the letter saying the check was incorrect I had no contact with the insurance company, no problems with cashing the check and no follow-up from them whatsoever. I had absolutely no idea that the check was made out for an incorrect amount. *Had I known, I would never have spent the money.*

Fagan Aff., sworn to July 31, 1992, at ¶¶ 5–8 (emphasis added).

Pursuant to the Order of the State Court, the Debtor paid American Mayflower the sum of $17,000 at some point after January 21, 1993 but prior to the filing of her bankruptcy petition on February 18, 1993.

## *THE PENDING MOTIONS*

In support of its cross-motion, American Mayflower submitted a statement of material facts not in dispute, as required by Rule 22(b) of the Local Rules of the Bankruptcy Court for the Eastern District of New York (the "Rule 22(b) Statement"). The Debtor does not dispute the Rule 22(b) Statement submitted by American Mayflower except as follows:

1. The Debtor never admitted that $38,592.62 remained in her position.

2. The Plaintiff did not trace the funds or product thereof remaining in the Debtor's possession except for the $17,000 fund.

3. The State Court did not previously decide the question of the creation of a constructive trust, but merely ordered restitution of the $17,000.

Debtor's Statement of Contested Facts, dated October 21, 1993.

In his Rule 22(b) Statement, the Chapter 7 Trustee states that the "only disputed controverted paragraph in Plaintiff's Rule 22 Statement is paragraph #17. The State Court did not identify the $17,000 as a trust fund and did not offset funds added to the debtor's bank account after receipt of the insurance check." Trustee's Affirm. in Opp'n and Local Rule 22 Affirm., dated September 29, 1993, at ¶3.

### DISCUSSION

*The Standards Governing a Motion for Summary Judgment*

Rule 56 of the Federal Rules of Civil Procedure[1] states that a motion for summary judgment shall be granted

> [i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56.

Accordingly, in ruling upon a summary judgment motion, the Court must determine whether a genuine issue of fact exists; it is not the Court's province at this stage of the proceeding to resolve disputed issues of fact if any are demonstrated to exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330, 106 S.Ct. 2548, 2556, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Moreover, the Court must draw all ambiguities and reasonable inferences in favor of the non-moving party. *Thornton v. Syracuse Savings Bank*, 961 F.2d 1042 (2d Cir.1992); *Levin v. Analysis & Technology, Inc.*, 960 F.2d 314 (2d Cir.1992).

The movant carries the initial burden of showing that there is an absence of evidence to support the non-moving party's case. *Cel-*

*otex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986); *In re J.T. Moran Financial Corp.*, 147 B.R. 335, 338 (Bankr.S.D.N.Y.1992); *CPY Co. v. Ameriscribe Corp. (In re Chas P. Young Co.)*, 145 B.R. 131, 135 (Bankr.S.D.N.Y.1992). The summary judgment motion should be granted only if (1) there is no genuine issue as to any material fact, and (2) the movant is entitled to judgment as a matter of law. Otherwise, it must be denied. *Anderson*, 477 U.S. at 247–52, 106 S.Ct. at 2509–12; *Hamilton v. Smith*, 773 F.2d 461, 466 (2d Cir.1985).

*Debtor's Motion for Summary Judgment*

■ There is no dispute that American Mayflower's complaint was filed after the date by which a creditor may timely object to the discharge of the Debtor or to the dischargeability of a debt owed by the Debtor. Thus, if American Mayflower was seeking damages against the Debtor and a declaration that the debt was non-dischargeable pursuant to 11 U.S.C. § 523, its claim would be time barred pursuant to FRBP 4007.

By its complaint, however, American Mayflower is seeking a declaration imposing a constructive trust on the funds mistakenly paid to the Debtor. Such a claim is not time barred because property held in a constructive trust is not property of the bankruptcy estate.

Section 541(a)(1) defines "property of the estate" as including "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Section 541(d) provides:

> Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest ... becomes property of the estate under subsection (a) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

It follows then that because a debtor does not have an equitable interest in property

---

1. Rule 56 governs a motion for summary judgment in an adversary proceeding by virtue of

Federal Rule of Bankruptcy Procedure 7056.

being held in trust for another, that interest is "not 'property of the estate.'" *Begier v. IRS,* 496 U.S. 53, 59, 110 S.Ct. 2258, 2263, 110 L.Ed.2d 46 (1990).

This principle was recognized in *In re Howard's Appliance Corp.,* 874 F.2d 88 (2d Cir.1989), where the Court of Appeals for the Second Circuit stated:

> Where the debtor's "conduct gives rise to the imposition of a constructive trust, so that the debtor holds only bare legal title to the property, subject to a duty to reconvey it to the rightful owner, the estate will generally hold the property subject to the same restrictions." ... Indeed, the Supreme Court has declared that, while the outer boundaries of the bankruptcy estate may be uncertain, "Congress plainly excluded property of others held by the debtor in trust at the time of the filing of the petition. ..."

874 F.2d at 93 (citations omitted); *see also In re Altchek,* 124 B.R. 944, 958 (Bankr. S.D.N.Y.1991) ("Any right to proceeds or profits from this property would be excluded from his estate by 11 U.S.C. § 541(d) because he does not hold the equitable interest in the property"). Similarly, Judge Marvin Holland observed in *In re Vichele Tops, Inc.:*

> When a debtor has only a bare legal interest, then only that limited interest is property of the estate. 11 U.S.C. § 541(d). If prior to the order of relief the debtor was holding property subject to a constructive trust, then the estate acquires merely naked legal title to the property subject to that constructive trust. *In re N.S. Garrott & Sons,* 772 F.2d 462, 467 (8th Cir.1985); *In re Wyatt,* 6 B.R. [947,] 953 [ (Bankr.E.D.N.Y.1980) ].

*In re Vichele Tops, Inc.,* 62 B.R. 788, 790 (Bankr.E.D.N.Y.1986).

Whether American Mayflower will ultimately succeed in proving that a constructive trust should be imposed and that it is entitled to recovery of any trust funds remains to be decided. If it does, then American Mayflower may recover funds from the estate. If it does not, then it will be relegated to the status of a general unsecured creditor. In no event, however, will American Mayflower be permitted to seek any recovery personally from the Debtor as American Mayflower failed to timely seek a determination as to the nondischargeability of any debt owing to it.

Accordingly, Debtor's motion for summary judgment is denied.

*American Mayflower's Motion for Summary Judgment*

■ American Mayflower argues that summary judgment is appropriate because there are no material issues of fact in dispute and it is consequently entitled to judgment as a matter of law. Moreover, American Mayflower points to the State Court proceedings and contends that the doctrine of collateral estoppel bars the relitigation of issues previously determined in that court.

The doctrine of collateral estoppel bars the "relitigation of an issue that was raised, litigated and actually decided by a judgment in a prior proceeding." *Jim Beam Brands Co. v. Beamish & Crawford, Ltd.,* 937 F.2d 729, 734 (2d Cir.1991); *see also Restatement Second of Judgments,* § 27 (1981). The difficulty here, however, is that the State Court did not decide that a constructive trust should be imposed upon any of the funds mistakenly paid to the Debtor because the issue was not raised by the parties in that proceeding. Rather, the State Court limited its review and decision to whether any of the funds mistakenly paid to the Debtor should be returned as restitution. *See* State Court Order, dated January 21, 1993 (the "essential inquiry in an action for *unjust enrichment or restitution* is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered" (emphasis added)). The State Court was not required to reach, and consequently did not apply, the doctrine of tracing to determine whether a specific trust *res* existed. *In re Vichele Tops, Inc.,* 62 B.R. at 790; *In re Trafalgar Associates,* 53 B.R. 693, 695 (Bankr.S.D.N.Y.1985).

■ The critical element distinguishing an action sounding in unjust enrichment or restitution from that of a constructive trust is that the latter requires "proof of a *res* to which the trust may attach." *In re Vichele Tops, Inc.,* 62 B.R. at 790; *see also* citations therein. Such proof is established by applying the doctrine of tracing:

[E]vidence of the existence of a trust, be it statutorily or constructively imposed, is insufficient, standing alone, to entitle the beneficiary to remove from the estate the property which he claims. Unless the beneficiary can, and does, trace the trust res he will be relegated to the status of a general unsecured creditor. *Selby v. Ford Motor Company,* 590 F.2d 642, 649 (6th Cir.1979); *Elliott v. Bumb,* 356 F.2d 749, 754 (9th Cir.1966); *Sonnenschein v. Reliance Insurance Company,* 353 F.2d 935 (2d Cir.1965).

*In re Trafalgar Associates,* 53 B.R. at 695.

The doctrine of tracing has been explained in the bankruptcy context as follows:

Once the trust relationship has been established, one claiming as a cestui que trust thereunder must identify the trust fund or property in the estate, and, if such fund or property has been mingled with the general property of the debtor, sufficiently trace the trust property. If the trust fund or property cannot be identified in its original or substituted form, the cestui becomes merely a general creditor of the estate. The same result will accrue where the trust property has been disposed of or dissipated in such manner as to leave nothing in its place. If the claimant succeeds in making the requisite proof, it then devolves upon the bankruptcy trustee to distinguish between what belongs to the estate and what belongs to the cestui que trust.

The situation frequently occurs where the trust funds have been traced into a general bank account of the debtor. The following general principles have been applied. The bankruptcy court will follow the trust fund and decree restitution where the amount of the deposit has at all times since the intermingling of funds equaled or exceeded the amount of the trust fund. But where, after the appropriation and mingling, all of the moneys are withdrawn, the equity of the cestui is lost, although moneys from other sources are subsequently deposited in the same account. In the intermediate case where the account is reduced to a smaller sum than the trust fund, the latter must be regarded as dissipated, except as to the balance, and funds subsequently added from other sources

cannot be subjected to the equitable claim of the cestui que trust. If new money is deposited before the balance is reduced, the reduction should be considered to be from the new money and not from the monies held in trust. This analysis may be referred to as the lowest intermediate balance test.

*In re Trafalgar Associates,* 53 B.R. at 695–96 (citing 4 Collier, *Bankruptcy,* ¶ 541.13, at 541–72 to 73 (15th ed. 1985) (footnotes omitted)).

Although the State Court stated in footnote 1 of its decision that the "defendant acknowledged" having nearly $17,000 "remain[ing] in her possession," the State Court did not inquire whether these funds were the specific trust res or whether these were simply funds that remained in Fagan's possession after having been co-mingled with other funds. Instead, its determination that the $17,000 should be returned to American Mayflower rested solely on the ground that American Mayflower was entitled to restitution in at least that amount. No mention was made by the State Court or the parties that the $17,000 was traced to the original funds provided in error by American Mayflower.

As a result, a genuine issue of material fact exists, particularly in view of Fagan's statements in her affidavit, which do not appear to have been controverted, that she "spent the money." Fagan Aff., ¶ 8. If, in fact, the Debtor dissipated the funds paid her by American Mayflower, a trust would not be recreated as a result of the Debtor thereafter receiving other funds. *In re Trafalgar Associates,* 53 B.R. at 696. While her later receipt of other funds may have required her to make "restitution" as ordered by the State Court, it does not resurrect a trust res that was depleted.

But for determining whether a specific trust res existed, the State Court decided the other elements required for imposition of a constructive trust. *See, e.g., In re American Motor Club, Inc.,* 109 B.R. 595, 599 (Bankr. E.D.N.Y.1990). As Chief Judge Conrad B. Duberstein explained in *In re American Motor Club, Inc.:*

A constructive trust is a court created equitable remedy to prevent unjust enrichment.... Under New York law, the fac-

tors which the courts look for in establishing a constructive trust are: (1) a confidential or fiduciary relationship; (2) a promise, express or implied; (3) a transfer made in reliance on that promise; and (4) unjust enrichment.... However, the four elements enumerated are not conclusive and courts have imposed constructive trusts in the absence of a confidential relationship, unjust enrichment or a promise.... Obviously, at trial the plaintiff has the burden of tracing the funds allegedly misappropriated....

109 B.R. at 599 (citations omitted); *see also In re Vichele Tops, Inc.,* 62 B.R. at 790.

The issue of unjust enrichment was clearly "raised, litigated and actually decided" by the State Court in granting American Mayflower's summary judgment motion. *See* State Court Order, dated Jan. 21, 1993. Consequently, the doctrine of collateral estoppel applies and bars the relitigation as to all other elements required in an action to impose a constructive trust except for the establishment of a specific trust *res.*

Upon further inquiry, it may well be established that the $17,000 turned over by Fagan to American Mayflower constitutes the trust *res.* Pending such inquiry and further hearing, however, the Court believes that these funds should be turned over to the Chapter 7 Trustee to be held in escrow until a final determination is made.

*The Chapter 7 Trustee's Motion for Summary Judgment*

The Court agrees with the Chapter 7 Trustee's assertion that the State Court did not identify the $17,000 as a trust fund and that, consequently, a genuine of issue of material fact remains to be decided at trial. For this same reason, however, the Trustee's motion for summary judgment fails. A genuine issue of material fact exists as to whether the $17,000 was a preferential payment, or whether it was the return to American Mayflower of funds which did not constitute held by the Debtor in constructive trust.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over the subject matter and the parties to this core proceeding pursuant to 28 U.S.C. § 1334 and § 157(b)(2)(E).

2. The Debtor's motion for summary judgment is denied.

3. American Mayflower's motion for summary judgment is denied on the basis that there is a genuine issue of material fact to be decided at trial.

4. The Chapter 7 Trustee's motion for summary judgment is denied on the basis that there is a genuine issue of material fact to be decided at trial.

5. The doctrine of collateral estoppel bars relitigation as to all other elements required in an action to impose a constructive trust except for the establishment of a specific trust *res.*

6. American Mayflower is directed to turn over the $17,000 to the Chapter 7 Trustee to be held in escrow pending further order of this Court.

Settle Order consistent with this Decision.