**Robert J. GILL, Plaintiff-Appellee,**

**v.**

**Julius STOLOW and Harry Stolow, co-partners, doing business under the firm name and style of J. & H. Stolow, Defendants-Appellants.**

**No. 106, Docket 24248.**

United States Court of Appeals
Second Circuit.

Argued Jan. 21, 1957.

Decided Feb. 7, 1957.

---

William E. Haudek, of Pomerantz, Levy & Haudek, New York City (Abraham L. Pomerantz, of Pomerantz, Levy & Haudek, and Manfred Wolkiser, New York City, on the brief), for defendants-appellants.

William Eldred Jackson, of Milbank, Tweed, Hope & Hadley, New York City (Rebecca M. Cutler, of Milbank, Tweed, Hope & Hadley, New York City, on the brief), for plaintiff-appellee.

Before CLARK, Chief Judge, and MEDINA and WATERMAN, Circuit Judges.

CLARK, Chief Judge.

■■■ This appeal is from a judgment awarding plaintiff $18,000 damages, with interest and costs to an aggregate of about $27,500, in his action for breach of warranty and fraud in the sale of a stamp collection, and dismissing the defendants' counterclaim of $4,-500 for stamps sold. This result was reached after a hearing in damages upon a default, which the court refused to reopen, D.C.S.D.N.Y., 18 F.R.D. 508, for failure of one of the defendants, Harry Stolow, to come to New York City from Munich, Germany, for the taking of his deposition. The basic issue on the appeal therefore is the court's disciplinary action under Fed.Rules Civ.Proc., rule 37(d), which provides, as its final and most drastic sanction, where a party "wilfully fails to appear" for the taking of his deposition after proper notice, for the entry of "a judgment by default against that party." The proper disciplining of a party under circumstances of default is one of those necessary, but troublesome, questions which usually must be left to the control of the trial judge in the course of his administration of his court. Reluctant as we are to interfere, we feel that this is an occasion where, viewed with the hindsight afforded us by a study of the entire record, the penalty assessed is too drastic and the case must be returned to accord defendants a trial of the seriously contested issues of fact involved. In final analysis, a court has the responsibility to do justice between man and man; and general principles cannot justify denial of a party's fair day in court except upon a serious showing of wilful default.

The litigation here concerns the purchase by plaintiff of a supposedly unique collection of stamps which he now claims was fraudulently overvalued. For this deceit and breach of warranty he seeks substantial damages by this action brought in June 1951 in the diversity

jurisdiction of the court below. One of the defendant partners, Harry Stolow, has lived in Munich during all the period involved and was not personally served in the action. Plaintiff sought as early as 1952 to take his deposition because he was said to have made the original purchase of the collection and to have known its cost. At that early period the court declined summary proceedings against him; and although now it is suggested that he and his codefendant showed a consistent course of obstruction for more than three years, this seems to us, as we view the record, an overdrastic characterization. The problem of a witness coming from Munich to New York City at his own expense (since negotiations for other solutions fell through) can be serious, as we concluded in Hyam v. American Export Lines, 2 Cir., 213 F.2d 221, reversing an order compelling a plaintiff in Bombay to come to New York City for his deposition. Actually both parties were engaged throughout this preliminary period in taking numerous depositions; and violent wrangles developed, including charges of bribery of witnesses. One of these intermediate matters is noted in D.C.S.D.N.Y., 16 F.R.D. 9. While these interlocutory proceedings did demonstrate the need of a definite trial to settle the disputes separating the parties, we think the record does not show willful default on Harry's part, at least at this time. Nor do we think the delays and charges of bribery affecting the other depositions clearly enough demonstrated to nullify Harry's claim of lack of willfulness.

We come, therefore, to June 1955, when the plaintiff started to reach again for Harry's testimony, serving notice for a deposition, which Judge Dimock refused to stay, D.C.S.D.N.Y., 18 F.R.D. 323. The resulting order of June 30, 1955, was fairly stern in requiring Harry to appear in New York City, but still permitted some leeway as to the date, viz., "on July 27, 1955, at 2:30 P.M., or such other date and hour as the parties may stipulate." There ensued negotiations between counsel as to a postponement for various reasons, including Harry's physical condition; and under date of July 19, plaintiff's counsel suggested an adjournment up until August 26, while defendants' counsel pressed for adjournment to October 14. Actually Harry did not appear for the deposition set for July 27, although it was never formally adjourned; and on September 1 on plaintiff's motion, supported and opposed by vigorous contradictory affidavits, the court entered a default. This itself now seems to us somewhat harsh in view of the circumstances of negotiation and possible postponement indicated in the order; surer progress, it seems, would have been made by an order, possibly peremptory, requiring Harry's immediate examination, rather than one foreclosing that possibility.

Nevertheless the default order did produce results in the form of Harry's actual presence in New York City as early as September 17, to the accompaniment of motions for reargument and for setting aside the default judgment. Furthermore, the several affidavits then presented from Harry, his brother Julius, certain doctors, and defendants' attorney demonstrate rather conclusively in our judgment that Harry actually had been in bad health, that his excuses to this effect had not been faked, and that his condition had culminated in a serious operation for incarcerated hernia on September 4, 1955. Against his German doctor's advice that he remain in the hospital in Munich until September 20, he left September 15 and arrived in New York City on September 17 prepared to testify. The court nevertheless refused on October 13, 1955, to reopen the default, 18 F.R.D. 508; and the hearing in damages ensued, tried to the court, and not to a jury as defendants had originally claimed.

It will be noted that not until the hearing on the reargument were various matters cleared up. Earlier there had been some failure of communication between Harry in Germany and defendants' counsel here, so that his situation had not

been thoroughly presented to the court. Thus in the light of the information actually before the court the earlier orders were perhaps justifiable, albeit stern; it was unfortunate that the more complete showing had to come on the late and somewhat prejudicial occasion of an application for a reargument. Nevertheless we are constrained to conclude that the record, however belatedly, did show bona fide ill health and a real attempt to comply with the court's order thereafter—circumstances which demonstrate that Harry's default, whatever its extent, was not properly to be characterized as willful. This is yet more true in the light of the excessive tolerance of delay so customary in American courts. At the time when Harry became available in September 1955 there had been no serious delay chargeable to the defendants alone when we view events against the background of Harry's distance from the jurisdiction. Actually he became available in New York City well within a month from the August 26 date suggested in July by plaintiff's counsel and within two months of the date proposed in the far-from-peremptory order of June 30. Considering the summer vacation and the court's calendar, it is doubtful that any real delay in the trial would have ensued from a decision to take his testimony—certainly not one of years, which we now envisage as the result of our necessary reversal. This is a case which, in view of the sharp charges and countercharges of fraud, peculiarly requires the final settlement of a trial; and we conclude that we must order it. We do not think our action should be an occasion for further delay, and therefore require Harry to be available for his deposition, if the district court shall so require, within a month of the issuance of our mandate. Further, we think the case should go promptly to trial thereafter and that the supersedeas bond in the sum of $30,865 which defendants have posted should stand to respond to whatever final decision may be rendered herein.

The judgment is therefore reversed and the action is remanded for proceedings in accordance with this opinion.