UNITED STATES of America

v.

**Gregory D. THORNTON and Ila J. Smith.**

**Civ. No. H–84–1122(MJB).**

United States District Court, D. Connecticut.

April 16, 1986.

Barry K. Stevens, Asst. U.S. Atty., Bridgeport, Conn., and Pat Profit, HUD, Boston, Mass., for plaintiff.

No appearance for defendants.

## RULING ON PLAINTIFF'S APPLICATION FOR JUDGMENT

BLUMENFELD, Senior District Judge.

On October 26, 1984, the United States filed a complaint against Gregory Thornton and Ila Smith seeking to recover certain Section 8 housing assistance payments made by the Department of Housing and Urban Development (HUD) to Thornton, as landlord, on behalf of Smith, as tenant, to supplement the rent on a residence in Windsor, Connecticut, that Thornton had leased to Smith.[1] In the complaint the government claimed that Thornton and Smith had filed for these rent subsidies in violation of a HUD regulation which prohibits a landlord from occupying a housing unit for which he is receiving housing assistance payments under a Section 8 program. 24 C.F.R. § 882.105 (1983). Specifically the government alleged that between March 1, 1980 and July 31, 1981, Thornton was occupying a single family house that he owned at 76 Wilson Avenue in Windsor, Connecticut, and that during the same period he was receiving housing assistance payments for the same residence on behalf of Ila Smith, who purportedly was leasing

---

1. The government alleges that these payments were made to Thornton through a program administered by HUD under the Housing Act of 1937, as amended, 42 U.S.C. § 1437b, which has the purpose of providing housing assistance funds to low income families. Pursuant to this statute HUD entered into a contract with the Housing Authority of the Town of Windsor and provided funds for the Authority to enter into "Housing Assistance Payments (HAP) Contracts" with qualified landlords and tenants. Under the terms of the HAP contract, the Authority, on behalf of the United States, pays eligible landlords a portion of the contract rent owed to these landlords by eligible tenants.

76 Wilson Avenue from Thornton. The government sued for recovery under the False Claims Act, 31 U.S.C. § 3729, and on theories of common law fraud and breach of contract. The total amount it sought and still seeks to recover from the defendants is $3,078 in housing assistance payments actually made to Thornton during the critical period, plus another $10,156 in penalties and interest.

Although the defendants were properly served, they did not file an appearance or answer the government's complaint in this case. Pursuant to a request by the government the clerk entered a default against Thornton and Smith on February 11, 1985. *See* Fed.R.Civ.P. 55(a). Subsequently the government moved this court to enter judgment in its favor pursuant to Rule 55(b)(2), and asked for damages in the amount of $13,234. The court scheduled a hearing on the government's application for judgment.

At the scheduled date for the hearing on October 21, 1985, the defendant Ila Smith appeared and stated that she had been attempting to find counsel to represent her in this matter. The court rescheduled the hearing to allow defendants an opportunity to secure counsel. They were unsuccessful in their efforts and the hearing was rescheduled and went forward in open court on December 16, 1985, with defendant Thornton appearing pro se.

At that hearing Thornton admitted that he and Smith applied for and received housing assistance payments, but stated that he did not occupy 76 Wilson Avenue between March 1, 1980 and July 31, 1981, as alleged by the government in its complaint. He offered his own testimony and the testimony of Donna Morrow, who was present in court, as evidence that he was living elsewhere during the period in question.

Construing Thornton's argument as a Rule 55(c) motion to set aside the default entered by the clerk, the court invited evidence from both sides going to the question of whether Thornton was in fact occupying 76 Wilson Avenue between March 1, 1980 and July 31, 1981.

Thornton's evidence consisted of his own testimony and that of Donna Morrow, a friend of Thornton. Each testified that Thornton lived with Morrow in Middletown, Connecticut, until approximately 1980, when they moved to Cornwall Avenue in Hartford where they lived together for the next few years. Morrow admitted that Thornton had a somewhat transient lifestyle, but she stated that he was "more in than out" at the Cornwall Avenue residence during the period in question in this case.

The government presented several witnesses in its effort to show that Thornton lived at 76 Wilson Avenue during the critical period. However, most evidence presented by the government was circumstantial.[2] The government offered only two witnesses who actually saw Thornton at the house at 76 Wilson Avenue during the period in question. One witness, Jesse White, Jr., the Postal Service letter carrier for the Wilson Avenue house, stated that he delivered mail to both Thornton and Smith during the period in question, and that he occasionally met Thornton going in or out of the house while delivering mail. He admitted that he never saw Thornton and Smith together, and could not testify that Thornton was actually living there. Similarly, another government witness, Anthony Albuquerque of the Windsor Police Department, testified that, while conducting surveillance as part of an unrelated investigation, he observed Thornton "coming and going" from the Wilson Avenue

---

**2.** Several witnesses testified that Thornton used the residence at 76 Wilson Avenue as a mailing address, and listed it as his residence on bank records and with the Department of Motor Vehicles, the telephone company, and other private and public concerns. There was also testimony that he had the HUD rent subsidies sent in his name to the house of his uncle, Everett Thornton, who lived at another address in

Windsor. The government called Everett Thornton to the stand who testified that Gregory Thornton did not live in his house but only used it to accept mail. While this evidence suggests that Thornton was willing, when it suited his needs, to use his property on Wilson Avenue as a mailing address, it is far from substantial proof that the Wilson Avenue house was his place of abode.

house during July 1981. He, too, could not state affirmatively that Thornton was living there at that time.

"Under Rule 55(c) the principal factors bearing on the appropriateness of relieving a party of a default are whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented." *Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir.1981). Defaults are not favored in this circuit, "particularly when the case presents issues of fact." *Id.* All "doubts are to be resolved in favor of a trial on the merits." *Id.*

 In this case the testimony of both sides at the hearing indicates to the court that there is, at least, a serious question of fact as to whether Thornton actually occupied 76 Wilson Avenue between March 1, 1980 and July 31, 1981. Considering that the proof of this fact is the single most important element underlying each of the government's theories of recovery, and considering that the government will have ample opportunity to prove this fact at a trial on the merits, it cannot be said that an order setting aside the default would "prejudice the adversary" in this case. That this case involves serious charges of fraud on the part of the defendants also "peculiarly requires the final settlement of a trial." *Gill v. Stolow*, 240 F.2d 669, 672 (2d Cir.1957).

Second, the presence of a "meritorious defense" is clear in this case. "Defendants' allegations are meritorious if they contain 'even a hint of a suggestion' which, proven at trial, would constitute a complete defense." *Keegel v. Key West & Caribbean Trading Co., Inc.*, 627 F.2d 372, 374 (D.C.Cir.1980). As noted above, as a prerequisite to recovery, the government must establish that Thornton lived at 76 Wilson Avenue during the relevant period. Thornton has provided more than enough evidence to at least raise a question as to the factual basis for the government's claims.

Finally, in this case there is no basis for a finding that the default was willful.

The defendants have been without representation of counsel during these proceedings and, despite efforts to retain counsel, were unable to do so. They appeared pro se to respond to the application for judgment, and presented a credible defense to the government's claims.

In sum, the circumstances of this case amount to good cause for setting aside the default entered by the clerk in this case. *See* Fed.R.Civ.P. 55(c). Therefore, the plaintiff's application for judgment is denied, the default entered by the clerk against the defendants on February 11, 1985 is set aside, and the case is reopened.

SO ORDERED.