In re ST. THERESA PROPERTIES, INC., Debtor.

BEEKMAN PAPER COMPANY, INC., Plaintiff,

v.

ST. THERESA PROPERTIES, INC., Defendant.

Bankruptcy No. 91 B 10344.
Adv. No. 92–8135A.

United States Bankruptcy Court, S.D. New York.

March 31, 1993.

John S. Pereira, Chapter 7 Trustee, New York City.

Harold Klapper, New York City, for Beekman Paper Co.

Susan Standish, New York City, for Kalikow Realty & Const.

Monasch & Strauss by Jeffrey T. Strauss, New York City, for Peter Galasso.

## DECISION ON PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT

TINA L. BROZMAN, Bankruptcy Judge.

In this procedurally peculiar adversary proceeding, Beekman Paper Company, Inc. (Beekman) seeks summary judgment imposing a constructive trust on the debtor's assets. Beekman hopes to leapfrog over the claims of the debtor's scheduled creditors, secured and unsecured. Given that Beekman's amended complaint was filed many months after the conversion of the case to a chapter 7 liquidation and appointment of a chapter 7 trustee, it is difficult to understand why this apparently insolvent debtor has answered the amended complaint, opposed Beekman's request for summary judgment and itself moved for summary judgment on the counterclaim which belongs to its estate. In any event, the trustee, pursuant to Fed.R.Bankr.P. 6009, has joined in the debtor's opposition to Beekman's motion although not in the debtor's request for summary judgment on its counterclaim.[1]

---

1. Secured creditors who are not parties to this adversary proceeding and who have not sought to intervene have purported to file papers objecting to Beekman's motion. Perhaps they did this in reliance upon my decision in *Longfellow Indus., Inc. v. Blumberg (In re Longfellow Indus., Inc.)*, 76 B.R. 338 (Bankr.S.D.N.Y.1987), in which I held that a party in interest has an absolute right to intervene in an adversary proceeding by virtue of section 1109(b) of the Bankruptcy Code, 11 U.S.C. § 1109(b). (Unlike in *Longfellow*, however, the secured creditors have not actually intervened.) As I have observed on more than one occasion, my decision

## I.

The debtor, St. Theresa Properties, Inc. (St. Theresa), which owns two warehouses, is itself owned by Robert Vinci, Sr. St. Theresa's business is not Mr. Vinci's only enterprise. Among other corporations which he owns are American Envelope Co., Inc. (AEC) and Magna Paper Co., Inc. (Magna). Beekman has never sold goods to St. Theresa. Rather, Beekman sold xerox printing paper on credit to AEC from 1986 until July 31, 1988, when their business relations deteriorated. In addition, Beekman stored certain inventory in St. Theresa's warehouse.

Prior to St. Theresa's bankruptcy filing, Beekman sued AEC, Magna, St. Theresa and Morgan Graphics Group (Morgan) in the Supreme Court of the State of New York, asserting that Vinci caused Beekman's inventory, stored in St. Theresa's warehouse, to disappear (the Paper Action). In a separate action in the same court, Beekman sued Magna, AEC, St. Theresa, Vinci, Vinci's son and Morgan for failure to pay outstanding invoices; in the latter action, AEC counterclaimed for $582,400, asserting that Beekman failed to pay for warehouse services for four months in 1987 (the Invoice Action). On March 27, 1991, months after St. Theresa had filed its bankruptcy petition, Beekman obtained a default judgment in the Paper Action against Magna. The action was severed as to the other defendants.[2] The default judgment was later adjusted to $28,000. In May, 1992, judgment in the amount of approxi-

in *Longfellow* was misguided, as was a decision in the district court, *Sarah R. Neuman Found., Inc. v. Garrity (In re Neuman)*, 124 B.R. 155 (S.D.N.Y.1991), *rev'g*, 103 B.R. 491 (Bankr. S.D.N.Y.1989), which relied on *Longfellow*.

In *Longfellow*, the debtor requested that I permit its committee of unsecured creditors to intervene in a suit which the debtor was prosecuting. The debtor felt that its attorneys were short-handed and needed the assistance of the committee's counsel. I permitted the intervention, which raised no new issues and did not unduly delay or prejudice the adjudication of the adversary proceeding or in any manner prejudice the defendants. Relying on *In re Marin Motor Oil, Inc.*, 689 F.2d 445 (3d Cir.1982), *cert. denied*, 459 U.S. 1206, 103 S.Ct. 1196, 75 L.Ed.2d 440 (1983), I concluded that the committee had an absolute right to intervene based on section 1109(b).

Where I erred was in failing to differentiate between an adversary proceeding and a case. Section 1109 vests a party in interest with the right to be heard in a case, but says nothing of intervention in adversary proceedings. The word "case" is a term of art, referring to the proceedings initiated by the filing of a bankruptcy petition by which a debtor is reorganized or liquidated. *See* 5 L.King, *Collier on Bankruptcy*, ¶ 1109.02[4] at 1109–32 (15th ed. 1992); *Fuel Oil Supply & Terminaling v. Gulf Oil Corp. (In re Fuel Oil Supply & Terminaling)*, 762 F.2d 1283 (5th Cir.1985). Although the Bankruptcy Code does not define a case, it plainly recognizes the distinction between a case and a proceeding in sections 301 through 303. Disputes within bankruptcy cases are of two sorts: contested matters, which concern the administration of the estate and are commenced with the filing of a motion, and adversary proceedings, which involve discrete disputes between parties and are commenced, like any civil litigation, with the filing of a complaint which must be served on the defendants. *See Collier* at 1109–32 and Rules 7001 and 9014 of the Federal Rules of Bankruptcy Procedure.

The better analysis is that intervention in an adversary proceeding is governed by Rule 24 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by virtue of Rule 7024 of the Federal Rules of Bankruptcy Procedure. *See Fuel Oil, supra*, 762 F.2d 1283. I had two options available to me in *Longfellow*, albeit not ones which were requested by the parties, which would have vested the committee's counsel with the right to conduct the litigation: I could have permitted the debtor to engage the committee's counsel as special litigation counsel or, alternatively, I could have authorized the committee itself to prosecute the claim on behalf of the estate. But the committee had no separate rights which needed protection through the vehicle of intervention.

I am in accord with Judge Abram's decision in *Neuman* (which was reversed by the district court in favor of the rationale expressed in *Longfellow*) which held that section 1109(b) does not grant to a party in interest an unconditional right of intervention in an adversary proceeding. The mischief created by reading section 1109(b) too expansively was aptly described by Judge Abram in *Neuman*, 103 B.R. 491, 499–500.

All this being said, because the secured creditors have not intervened in Beekman's adversary proceeding, I have not considered their submissions.

2. Beekman contends that a $28,000 judgment was entered against all of the Vinci corporations, including St. Theresa. *See* Memorandum of Law in Support of Summary Judgment at p. 11. The judgment furnished, however, applies only to Magna. *See* Notice of Motion for Summary Judgment Exhibit F.

mately $332,000 was rendered after trial in the Invoice Action against all of the defendants other than St. Theresa.[3] The sum of those two judgments against affiliates of St. Theresa is the amount of Beekman's amended proof of claim in St. Theresa's chapter 7 case.

It was on January 25, 1991, that St. Theresa filed its voluntary chapter 11 petition. It continued to operate as a debtor-in-possession until October 25, 1991, when I converted its case to a liquidation under chapter 7. Beekman commenced this adversary proceeding on January 27, 1992 and thereafter moved for establishment of a constructive trust.

Beekman now moves for summary judgment, seeking (i) to pierce the corporate veil so that it may assert its claims against St. Theresa; (ii) to impose a constructive trust on St. Theresa's assets; and (iii) to require St. Theresa to turn over assets (or cash proceeds from a sale of assets) in an amount equal to the value of Beekman's claim, $360,000 plus interest.

Beekman contends that piercing the corporate veil is appropriate, since Vinci, the controlling shareholder, allegedly disregarded the corporate form with respect to all his corporations, including St. Theresa.[4] *See* Garfield Aff. at pp. 3–6. Beekman further argues that Vinci diverted monies which AEC owed to Beekman. It alleges that in 1986, Vinci used profits that AEC derived from the xerox paper resales to finance St. Theresa's property, rather than using those funds to repay the money that AEC owed Beekman, and further alleges that Vinci admitted that this had occurred. *Id.*

Garfield suggests that Vinci employed an elaborate scheme by which St. Theresa would lease space to AEC and Magna at above market rates. He surmises that AEC and Magna rented the whole warehouse from St. Theresa, but occupied only a portion of the space. St. Theresa is said then to have used the "excess rental income" to cover its mortgage payments, real estate taxes, insurance and maintenance costs. Garfield asserts that "the accounting figures make this (scheme) crystal clear." *See* Garfield Aff. at ¶ 13.

St. Theresa opposed Beekman's initial complaint. That opposition was joined by the Chapter 7 trustee. They sought dismissal of the complaint for failure to allege proper jurisdiction.

On June 5, 1992, I conditionally granted the trustee's motion to dismiss Beekman's complaint for failure to allege proper jurisdiction. Beekman then served an amended verified complaint by mail on June 20, 1992, properly pleading jurisdiction. Beekman subsequently moved for summary judgment and entry of a default judgment granting a constructive trust against the Chapter 7 Trustee, alleging that the trustee failed to timely answer Beekman's amended verified complaint. The trustee's answer, dated July 30, was served on Beekman by mail on August 3. *See* Trustee's Answer. St. Theresa cross-moved for summary judgment against Beekman for $582,-400, plus interest, arising from warehouse services it had allegedly performed prepetition for Beekman. *See* Debtor's Cross–Motion for Summary Judgment at p. 3. The trustee has also opposed Beekman's motion for summary judgment on the basis that Beekman has failed to establish the elements for imposition of a constructive trust.

## II.

### A. DEFAULT JUDGMENT

The predicate to consideration of the merits of Beekman's claim is the disposition of its request that I grant a default

---

3. In light of the fact that no judgment was obtained against St. Theresa, the judgment rendered on the claims asserted is not *res judicata* as to St. Theresa.

4. Beekman's arguments are found in the affidavit of Howard Garfield, Beekman's former comptroller. This affidavit has been incorporated into Howard Klapper's affidavit, and is submitted as part of Beekman's Motion To Establish A Constructive Trust, as well as Beekman's Motion for Summary Judgment.

judgment against the estate because of the trustee's default.[5]

■ There is no question that the trustee's answer was served some twelve days after it was due. The entry of a default judgment is subject to the court's discretion; such a sanction is generally favored as a last, not a first, resort. *Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir.1981); *Peterson v. Term Taxi, Inc.*, 429 F.2d 888, 891 (2d Cir.1970). There are strong policies favoring the resolution of general disputes on their merits. *Belford v. Martin–Trigona (In re Martin–Trigona)*, 763 F.2d 503, 505 (2d Cir.1985). Default judgments are strongly disfavored, especially in cases involving material issues of fact. *Gill v. Stolow*, 240 F.2d 669, 670 (2d Cir.1957). Decisions are usually resolved in the defaulting party's favor even where doubt exists as to the defaulting party's exculpatory reasons. *Meehan v. Snow*, 652 F.2d at 277.

■ Recognizing the severe nature of the default remedy, courts employ a three-pronged test to determine whether a default motion is warranted. *Meehan v. Snow*, 652 F.2d at 277. Courts will consider (1) the willfulness of the default; (2) whether the adversary would suffer prejudice were the default set aside; and (3) whether the defaulting party presents a meritorious defense. *Id.* at 277; *Gill*, 240 F.2d at 671–72. The Second Circuit in *Meehan* described as "low" the threshold to be met by a defendant for setting aside the default under Rule 55. 652 F.2d at 277.

Here, nothing suggests that the trustee's failure to answer or otherwise respond timely to Beekman's Amended Complaint was willful or malicious. In fact, the trustee had properly responded to Beekman's initial, faulty complaint. It was only the answer to the amended complaint which was untimely. Nor did the trustee's late-filed answer prejudice Beekman. Moreover, the trustee has presented a meritori-

ous defense, as will be discussed *infra*. *See* Trustee's Objection to Beekman's Motion. Accordingly, Beekman's application for a default judgment is denied.

## B. SUMMARY JUDGMENT

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, made applicable here by Rule 7056 of the Federal Rules of Bankruptcy Procedure, summary judgment is appropriate if the court determines that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). A fact is considered material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. at 2510. The court's role in ruling on a motion for summary judgment "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d at 11.

■ The moving party initially bears the burden of establishing the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. at 322–23, 106 S.Ct. at 2552. That burden can be satisfied by demonstrating the absence of evidence to support the non-movant's case. *Id.* at 325, 106 S.Ct. at 2554. When a motion for summary judgment is made and supported by the movant, Rule 56(e) requires the non-moving party to set forth specific facts demonstrating that genuine issues of mate-

---

**5.** The debtor and the secured creditors had also raised the procedural issue of failure to join Vinci, Magna, AEC and the secured creditors as necessary and interested parties pursuant to Fed.R.Civ.P. 19. No one briefed this issue or even alluded to it at oral argument on Beekman's motion. In light of my conclusions regarding the merits of the request for a constructive trust, I see no need to spend any time on joinder.

rial fact remain for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The non-moving party may not defeat a properly supported motion for summary judgment by relying on self-serving and conclusory statements concerning the nature of the facts. *Wyler v. United States*, 725 F.2d 156, 160 (2d Cir.1983).

As the Supreme Court has explained, the non-moving party must come forward with specific facts and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. at 586, 106 S.Ct. at 1356. If the non-moving party fails to do so, summary judgment, if appropriate, shall be entered against him.

■ Beekman's entitlement to a constructive trust hinges on its ability to foist upon St. Theresa liability for the debt incurred by AEC and said to be owing to Beekman. Whereas this asserted ability to pierce the corporate veil would ordinarily be the appropriate point of departure in analyzing this adversary proceeding, I need not actually deal with the issue here because I have concluded that even if the corporate veil could be pierced, Beekman is not entitled to the remedy of a constructive trust. So we begin, therefore, somewhat out of sequence, with the elements necessary for the imposition of a constructive trust.

■ Under New York law, a party claiming entitlement to a constructive trust must typically establish four elements. They include:

1) a confidential or fiduciary relationship;

2) a promise, expressed or implied;

3) a transfer made in reliance on that promise; and

4) unjust enrichment.

*In re Koreag, Controle et Revision, S.A.*, 961 F.2d 341 (2d Cir.1992) (citations omitted); *see also In re Branch Motor Exp. Co.*, 51 B.R. 146, 148 (Bankr.S.D.N.Y.1985). Courts additionally have required the claimant to establish proof of a *res* to which the constructive trust could attach, *In re United States Lines, Inc.*, 79 B.R. 542, 544 (Bankr.S.D.N.Y.1987), and have required the claimant to trace the property. *In re Vichele Tops, Inc.*, 62 B.R. 788, 790 (Bankr.E.D.N.Y.1988); *Branch Motor Exp. Co.*, 51 B.R. at 148; *Rogers v. Rogers*, 63 N.Y.2d 582, 483 N.Y.S.2d 976, 473 N.E.2d 226 (1984) (absent exceptional circumstances, claimant must be able to trace his equitable interest to identifiable property in the hands of the purported constructive trustee).

No confidential or fiduciary relationship existed between Beekman and any of the Vinci-owned entities, nor does Beekman contend otherwise. It is a firmly established principle that if a recipient of funds is not prohibited from using them as his own and commingling them with his own monies, a debtor-creditor, not a trust, relationship exists. *Koreag*, 961 F.2d at 353; *Dampskibsselskabet AF 1912 Aktieselskab v. Black & Geddes, Inc. (In re Black & Geddes, Inc.)*, 35 B.R. 830, 836 (Bankr. S.D.N.Y.1984). Nonetheless, the lack of a fiduciary or confidential relationship between Beekman and the Vinci entities, without more, would not automatically defeat Beekman's claim for a constructive trust, for as I have previously noted, a person wrongfully acquiring property can be treated as a constructive trustee notwithstanding the lack of fiduciary duty. *In re Brierley*, 145 B.R. 151, 166 n. 6 (Bankr.S.D.N.Y.1992).

What is fatal to Beekman's claim, however, is the lack of a promise, express or implied, from any of the Vinci entities that Beekman would be given some interest in the money AEC received from the sale of xerox paper it had earlier purchased from Beekman. Beekman sold goods to AEC on credit, a transaction typical for this type of business. Nothing in this record shows that AEC was obligated to pay Beekman from any specific source or that Beekman bargained for any interest in the funds AEC derived from later sales to customers. Thus, this case is one step removed from those where a recipient of funds commingles them with his own. If there was no promise, express or implied, to pay Beek-

man out of the proceeds of the goods which Beekman sold to AEC, there was no transfer made in reliance on any such promise. *Lester v. Zimmer*, 147 A.D.2d 340, 542 N.Y.S.2d 855, 856–57 (3d Dep't 1989) (for a constructive trust to be imposed, there must be a transfer in reliance on a promise to share in the result). Without a doubt, there was no express promise. Even in the absence of an express promise, however, a promise may be implied where it is inconceivable that the transfer would have occurred in its absence.[6] *Sharp v. Kosmalski*, 40 N.Y.2d 119, 122, 386 N.Y.S.2d 72, 351 N.E.2d 721 (1976); *Tordai v. Tordai*, 109 A.D.2d 996, 486 N.Y.S.2d 802, 804 (3d Dep't 1985); *Reiner v. Reiner*, 100 A.D.2d 872, 474 N.Y.S.2d 538, 541 (2d Dep't 1984); *Gray v. Fill* (*In re Fill*), 82 B.R. 200, 225 (Bankr.S.D.N.Y.1987). In this matter, where goods were sold on credit on an open account, the facts do not warrant inferring a promise to pay from particular assets.

■ As the Second Circuit explained in *Koreag*, the key factor in determining whether a constructive trust arises is unjust enrichment. There is unjust enrichment when a person holds the title to property that he is under an obligation to convey to another, and when that obligation does not arise merely because he has voluntarily assumed it. Scott and Fratcher, *The Law of Trusts*, § 462 at 304–05 (4th ed. 1989). In *Koreag*, the transferor of funds and the transferee of funds were engaged in currency exchanges. The particular funds at issue were transferred by the transferor to the transferee after the transferee had been declared insolvent and a liquidator appointed for it under Swiss law. Nonetheless, the liquidator accepted the funds without performing its end of the bargain. Given that the liquidator had what may have been a fiduciary relationship to creditors, the Second Circuit suggested that there was probably unjust enrichment of the insolvent estate. (The circuit court remanded to the bankruptcy court for a trial on the issue of constructive trust.) Plainly the Circuit seized on the knowledge of the liquidator that the estate was insolvent as a basis for questioning the propriety of the liquidator's retention of the transferred funds.

The mere receipt of goods by an affiliate of a debtor which three to five years later (the goods were delivered over a two-year period) files a chapter 11 petition does not make one squirm as the facts in *Koreag* do. St. Theresa and its affiliates were under no obligation to transfer specific property to Beekman in payment of Beekman's open account for the sale of xerox paper. In short, Beekman has not shown that AEC was unjustly enriched by its receipt of paper, albeit that AEC may have breached its contract to pay Beekman.

Beekman holds no security interest in St. Theresa's property, nor does it claim to be a secured creditor. St. Theresa did not vest Beekman with an interest in property which would grant Beekman anything more than an unsecured claim against St. Theresa, assuming that Beekman could pierce the corporate veil or otherwise obtain recourse against St. Theresa.

■ But even if there had been evidence in this record sufficient as a matter of law to impose a constructive trust, that would not be enough for Beekman to obtain the relief which it seeks. For the existence of a trust, be it statutorily or constructively imposed, is insufficient, standing alone, to entitle the beneficiary to remove from the estate the property which he claims; unless the beneficiary traces the trust *res* he will be relegated to the status of a general unsecured creditor. *Savoy Records, Inc. v. Trafalgar Assoc.* (*In re Trafalgar Assoc.*), 53 B.R. 693, 695 (Bankr. S.D.N.Y.1985), citing *Selby v. Ford Motor Co.*, 590 F.2d 642, 649 (6th Cir.1979); *Elliott v. Bumb*, 356 F.2d 749, 754 (9th Cir.), *cert. denied sub nom. Schutzbank v. Elliot*, 385 U.S. 829, 87 S.Ct. 67, 17 L.Ed.2d 66 (1966); *Sonnenschein v. Reliance Ins. Co.*, 353 F.2d 935 (2d Cir.1965); *accord In re Vichele Tops, Inc.*, 62 B.R. at 788; *In re*

---

**6.** With respect to the $28,000 worth of paper which is claimed to have disappeared from storage, one could perhaps imply a promise to return the stored goods (assuming that there was no express promise.)

*United States Lines, Inc.,* 79 B.R. at 544–48 (the imposition of a trust presumes entitlement to a specific property, the existence of a res and the ability to trace the property; if trust funds cannot be traced due to prepetition commingling, the beneficiary's claim is to be classified as that of a general creditor.)

Beekman's ability to trace its paper distills to the following argument[7]: in late 1986, at the same time St. Theresa acquired the property, a check that Magna had issued to Beekman for $103,745 bounced. Thereafter, St. Theresa's accounts receivable increased by at least that amount. Beekman, however, continued to supply paper to AEC and Magna until it terminated the relationship in 1988. Beekman argues that since St. Theresa has offered no other explanation for how it obtained funds to finance its obligations on the property from 1986 through 1988, St. Theresa must have used the proceeds of AEC and Magnas' sales of Beekman's paper to meet its financial needs. *See* Garfield Aff. at pp. 3–6. This piles supposition upon supposition and is peculiarly ill-suited to resolution on a motion for summary judgment.

Beekman claims that St. Theresa rented the entire warehouse to Magna and AEC for an amount sufficient to cover all of its obligations, although Magna and AEC occupied only a portion of that space. St. Theresa, Beekman contends, used the "excess rent" to finance the debt on its property. What Beekman fails to provide, however, is any documentation showing that the funds AEC and Magna used to pay St. Theresa its rent came directly from the sale of Beekman's paper.

Beekman urges that the Second Circuit's holding in *In re Kaiser,* 722 F.2d 1574 (2d Cir.1983), mandates my impressing a constructive trust on St. Theresa's assets. In *Kaiser,* the debtor, while insolvent, gave his wife the money to purchase a piece of property, title to which was taken solely in her name. The monies to maintain the property and pay the mortgage, which the debtor co-signed, were furnished by the debtor alone. Subsequent to the purchase, the debtor exercised complete control over the property. The Second Circuit affirmed the bankruptcy court's determination that the transfers of money which were traced directly into the property were made by the debtor with the actual intent to defraud his creditors. This warranted the imposition of a constructive trust on the property because the debtor, having furnished all funds expended in connection with the acquisition and maintenance of the property and having exercised complete dominion and control over it, was its beneficial owner.

This case is wholly distinguishable from *Kaiser.* Unlike in *Kaiser,* Beekman has not shown that St. Theresa was the ultimate recipient of any fraudulent transfer nor has Beekman proven that St. Theresa used any property in which Beekman had a legal or equitable interest to finance St. Theresa's purchase or maintenance of the real property.

Beekman also cites *MDO Dev. Corp. v. Kelly,* 726 F.Supp. 79 (S.D.N.Y.1989), *amendment denied by* 735 F.Supp. 591 (S.D.N.Y.1990) as support for its argument that a constructive trust ought be imposed. In *MDO,* a restaurant manager stole the restaurant's funds by endorsing checks written to the restaurant, signing his own name and then depositing those checks into his own account. The manager thereafter used those funds to purchase real property. The district court held that the manager had been unjustly enriched by his acts and accordingly impressed upon the property a constructive trust for the benefit of the restaurant and its owners. *Id.*

*MDO* is distinguishable because the restaurant manager had a duty of loyalty to

---

7. Beekman has made no effort whatsoever to trace the $28,000 in paper which it says disappeared from storage. It erroneously mentions in conclusory fashion that "the $28,000 outstanding judgment due to the fraud of Vinci, St. Theresa and the Vinci corporations" ought be impressed with a constructive trust and turn-

over order. *See* Beekman's Notice of Motion For Summary Judgment at ¶ 22; Beekman's Memorandum of Law for Summary Judgment at pp. 2, 11, 13. As discussed *supra,* the $28,000 default judgment was granted only as to Magna. The state court action was severed and continued as to the remaining defendants.

or, in other words, a fiduciary or confidential relationship with, his employer which he had breached and because the funds were traced directly into the realty. In that instance, the funds were wrongfully taken by the employee. In contrast, AEC's receipt of paper from Beekman was not wrongful. The paper was purchased, at which point there arose a classic debtor-creditor relationship between Beekman and AEC.[8]

## III.

The debtor's motion for summary judgment on the debt which it alleges is due from Beekman is presented on too sparse a factual record to be determined now. No discovery has occurred. Moreover, this very same claim was presented in state court by AEC and rejected. Certainly, this raises a serious question as to whether St. Theresa is properly asserting this claim. Wisely, the trustee has not joined in that cross motion. Whether to pursue this counterclaim, which the trustee has not asserted, is a decision belonging to the trustee and not to the debtor. *Minhlong Enter., Inc. v. New York Int'l Hostel, Inc., et al. (In re New York Int'l Hostel, Inc.),* 142 B.R. 90, 95 (Bankr.S.D.N.Y.1992), citing *In re Ciavarella,* 28 B.R. 823, 825 (Bankr.S.D.N.Y.1983); *cf. American Nat'l Bank v. Mortgage Am. Corp. (In re Mortgage Am. Corp.),* 714 F.2d 1266, 1275–76 (5th Cir.1983); *AP Indus., Inc. v. S.N. Phelps Co., Inc. (In re AP Indus., Inc.),* 117 B.R. 789 (Bankr.S.D.N.Y.1990).

The motion is denied without prejudice to renewal by the trustee after development of a more complete factual record. *See* Fed.R.Civ.P. 56(f).

## IV.

Were the only problem with Beekman's motion a failure to adequately trace, I would simply deny its motion for summary judgment and proceed, after discovery, to trial. What Beekman has shown, however, is that it cannot establish the requisite elements which would entitle it to a constructive trust if only it adequately could trace its property.[9] It is hornbook law that this court has discretion to grant summary judgment in favor of the non-movant, whether or not the non-movant affirmatively seeks such relief. *Lowenschuss v. Kane,* 520 F.2d 255, 261 (2d Cir.1975); *Pittson Warehouse v. American Motorists Ins. Co.,* 715 F.Supp. 1221 (S.D.N.Y.1989). Accordingly, with respect to Beekman's motion for the impression of a constructive trust, summary judgment is granted against it. If Beekman is seeking a declaration that it possesses an unsecured claim against St. Theresa's estate, a matter which is not clear from the papers which Beekman submitted, resolution of that matter is reserved for later adjudication if and when the trustee objects to Beekman's proof of claim. To proceed to trial on that issue is senseless at this point since it is not certain that there will be any funds for distribution to unsecured creditors. St. Theresa's cross-motion for summary judgment is denied.

**8.** The Bankruptcy Code recognizes a remedy for the incurrence of a debt on false pretenses, a false representation or actual fraud. If the creditor can prove such circumstances, he is entitled to have his debt excepted from the discharge granted to the debtor, if a discharge is granted. 11 U.S.C. § 523(a)(2). In addition, the Bankruptcy Code preserves for a creditor who ships goods to a debtor whatever statutory or common law right of reclamation the creditor possesses if a demand is made within 10 days of the debtor's receipt of the goods. 11 U.S.C. § 546(c). But an unsecured creditor is not entitled to convert his claim into one of ownership of specific property, except to the limited extent that reclamation lies. Were the law otherwise, all trade creditors selling goods to the debtor would be able to impose constructive trusts if they could trace the proceeds of the property which they delivered.

**9.** Assuming that Beekman were entitled to the imposition of a constructive trust on St. Theresa's property, this does not mean necessarily that Beekman would jump ahead of *bona fide* mortgagees. *See Provencher v. Berman,* 699 F.2d 568 (1st Cir.1983) (court held that where the holder of property subject to a constructive trust used commingled funds to purchase the property subject to a mortgage, the beneficiary of the trust took title to the property subject to that mortgage.) This is not, however, an issue which must be resolved in light of the conclusion that no constructive trust is warranted.

SETTLE ORDER consistent with this decision.