In the Matter of CHALK LINE MANUFACTURING, INC., Debtor.

CHALK LINE MANUFACTURING, INC., et al., Plaintiffs,

v.

FRONTENAC VENTURE V LIMITED PARTNERSHIP, et al., Defendants.

Bankruptcy No. 93–42773.
Adv. No. 94–40003.

United States Bankruptcy Court, N.D. Alabama, Eastern Division.

July 28, 1995.

---

Robert Adams, Najjar Denaburg, Birmingham, AL, for debtor.

Wilber Silberman and Jim Mendelsohn, Gordon, Silberman, Wiggins & Childs, Birmingham, AL, for Unsecured Creditors' Committee.

Matthew Martin, Jones, Day, Reavis & Pogue, for The CIT Group/Business Credit, Inc.

Gregory Hawley and Robert Tapscott, Maynard, Cooper & Gale, Birmingham, AL, for Frontenac Cos.

Gregory Cook, Balch & Bingham, Birmingham, AL, for Bradford Capital.

Andrew W. Bolt, Bolt, Isom, Jackson & Bailey, Anniston, AL, for Willis M. Chalk.

Sarah Jackson, Lightfoot, Franklin, White & Lucas, Birmingham, AL, for A.W. Marler.

Olin Brooks, for Bankruptcy Admin.

## AMENDED MEMORANDUM OPINION

JAMES S. SLEDGE, Bankruptcy Judge.

### FACTS

The Official Committee of the Unsecured Creditors of Chalk Line Manufacturing, Inc., debtor in possession, moves for authority to prosecute action and to intervene in this adversary proceeding. Appearing before the Court were the attorney for the debtor in possession, the attorneys for the unsecured creditors' committee, the attorney for the Bradford defendants, the attorneys for the Frontenac entities, the attorneys for the individual plaintiffs, and the attorney for CIT Group. Also set for hearing were the defendants' motion for preliminary approval of a proposed settlement and motion for certification of a settlement class.

On August 20, 1993, the plaintiffs filed this adversary proceeding as a civil action in state court. This action was later removed to federal court and referred to this Court on January 5, 1994. This suit is based upon allegations of fraud, breach of fiduciary duty, suppression and concealment of information from minority shareholders, dilution of voting power, deprivation of voting rights, freeze out of minority shareholders, and other torts that may be alleged by minority shareholders. On July 26, 1994, this Court entered an order which dismissed counts 2 and 3 of the original complaint. Count 4 of the complaint, alleging shareholder derivative claims remained in the law suit as no one filed a motion to dismiss that count.

Based upon the Court's July 24, 1994 decision, the parties to the suit continued discovery on the remaining counts. The parties went through extensive formal and informal discovery and analyzed the remaining counts, including the likelihood of recovery and the cost of recovery. Based upon their discovery and analysis, the parties decided that settlement of the remaining claims was in the best interest of all of the parties. On March 16, 1995, the defendants, Bradford Capital Partners, J.C.B. Partners, L.P., Bradford and Company, Inc. and Thomas Pritchard, filed a motion for a settlement hearing. This motion stated that all of the parties to the original suit had agreed to settle, however, the Unsecured Creditors' Committee had not taken a position on the litigation. The Committee was never a party in the adversary proceeding. CIT Group holds the overwhelming majority of claims, both secured and unsecured, and supports the settlement.

On April 14, 1995, approximately 20 months after the initial filing of this complaint, the Unsecured Creditors' Committee filed the present motion to intervene. The Committee asserts that the consideration given to the estate by the Frontenac defendants, in the form of a reduction of its claims, is inadequate. Both the CIT Group and the defendants filed objections to the Unsecured Creditors' Committee motion to intervene. The debtor in possession, although not objecting to the Unsecured Creditors' Committee's motion, has determined that there is no benefit to the estate in pursuing the litigation any further.

The issue presented by this motion is whether the Unsecured Creditors' Committee has an absolute right to intervene in the adversary proceeding pursuant to 11 U.S.C. § 1109(b) or, in the alternative, whether it qualifies for intervention under Rule 7024(a)(2) of the Federal Rules of Bankruptcy Procedure. After consideration of the facts, the arguments presented by the parties and independent research, the Court determined that the Unsecured Creditors' Committee is not entitled to intervene in the above-styled adversary proceeding.

## DISCUSSION

In its brief and argument, the Committee asserts that 11 U.S.C. § 1109 confers standing upon the Committee to institute claims or intervene in these proceedings against former directors of the debtor in possession. Section 1109 of the Bankruptcy Code provides: "[a] party in interest, including, ..., a creditors' committee, ..., may raise and appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b) (emphasis added). There is a split of authority on whether the language of § 1109 is to be read broadly so as to include adversary proceedings or narrowly so as to apply purely to the case.

The leading case espousing the broad reading of § 1109(b) is *In re Marin Motor Oil, Inc.*, 689 F.2d 445 (3rd Cir.1982) *cert. denied*, 459 U.S. 1206, 1207, 103 S.Ct. 1196, 75 L.Ed.2d 440 (1983). In *Marin Oil*, the bankruptcy court had appointed a trustee

due to the need for a disinterested third party to investigate the situation. The trustee had initiated two adversary proceedings. The committee became dissatisfied with the trustee's performance and sought to intervene in both adversary proceedings. Reading § 1109(b) narrowly, the bankruptcy court refused to allow the committee to intervene. The committee appealed this decision to the district court[1] which reversed, holding that § 1109(b) was mandatory, allowing intervention as of right, and could not be satisfied by merely allowing the committee to file *amicus* briefs. The district court order was appealed as well. After determining that it had jurisdiction, the Third Circuit held that there was an absolute right to intervene in adversary proceedings. In an opinion relying heavily on Collier, the Court noted that "case is the widest term functionally and other terms designate step within the case." *Id.* at 451. The Court went on to hold that:

> "[i]t would be a strained construction to read this "unqualified" right as being limited to participation in the general administrative aspects of the case. More importantly, the derivation of section 1109(b) from section 206 of Chapter X suggests that Congress had no intention of upsetting the long line of section 206 cases granting a broad, absolute right to appear and be heard."

*Id.*

The leading case holding that § 1109(b) should be read narrowly so as to prohibit intervention as of right is the Fifth Circuit opinion *Fuel Oil Supply and Terminaling v. Gulf Oil Corp.*, 762 F.2d 1283 (5th Cir.1985). In *Fuel Oil*, the creditor's committee sought permission to intervene in an adversary proceeding to set aside a preferential transfer; Gulf Oil Corp. objected to the intervention. The district court denied the creditors' committee motion without a hearing. The creditors' committee appealed claiming that 11 U.S.C. § 1109(b) "is a statute confer[ring] an unconditional right to intervene, ..., [and] that Congress intended "case" as used in § 1109(b) to be an all-encompassing term, allowing a party in interest to intervene in

---

**1.** Note: whether this is an appealable final order     is also unclear.

any proceeding related to a case in bankruptcy." *Id.* at 1284–1285. The Court of Appeals first addressed the *Marin Motor Oil* case noting, "[b]ased on the Bankruptcy Code alone, therefore, the argument that § 1109(b) creates an absolute right to intervene in adversary proceedings appears strong." *Id.* at 1286. The Court went on to determine that "[t]his argument loses much of its force, however, when § 1109(b) is juxtaposed with the procedural rules governing intervention, Rule 24, Fed.R.Civ.P., and Bankruptcy Rule (BR) 7024." *Id.* The Court looked at case law and commentary addressing Rule 24(a)(1) and found that "courts have been hesitant to find unconditional statutory rights of intervention, ..., [t]he statutes that do confer an absolute right to intervene generally confer that right upon the United States or a federally regulatory commission; private parties are rarely given an unconditional statutory right to intervene." *Id.* Combining the analysis of Rule 24 with the advisory committee note to Bankruptcy Rule 7024[2], the Court came to the conclusion that "Congress must have intended courts to apply Rule 24(a)(2) rather than Rule 24(a)(1) to applications to intervene in bankruptcy adversary proceedings under § 1109(b)." *Id.* at 1287. The Court relied on cases dealing with a creditors' committee's right to initiate adversary proceedings. *Id.*

Other Circuits that have addressed the issue more recently have adopted the reasoning of the Fifth Circuit. The Tenth Circuit in *In re Kaiser Steel*, 998 F.2d 783 (10th Cir.1993) held that "[u]nder 11 U.S.C. § 1109(b), a party in interest may appear and be heard on any issue in a case; however, that 'does not afford a right to intervene under Rule 24(a)(1), even though such 'parties in interest' enjoy the general right to 'monitor' the progress of the chapter 11 case.'" *Id.* at 790 *quoting In re Thompson*, 965 F.2d 1136, 1142 n. 8 (1st Cir.1992). As evidenced by the foregoing quote, the First Circuit also refused to read an absolute right to intervene in adversary proceedings.

The Creditors' Committee relied upon the case of *In re Longfellow Industries*, 76 B.R. 338 (Bankr.S.D.N.Y.1987) in its assertion that they had an absolute right to intervene in the above-styled adversary proceeding. This case held that a party in interest has an absolute right to intervene in an adversary proceeding by virtue of § 1109(b). The Committee's reliance on this case is misplaced. Although not overruled, Judge Tina Brozman, the author of the *In re Longfellow Industries* opinion, explicitly abandoned the reasoning of *Longfellow*. In a footnote to her opinion in *Beekman Paper Company, Inc. v. St. Theresa Properties (In re St. Theresa Properties, Inc.)*, 152 B.R. 852 (Bankr.S.D.N.Y.1993), Judge Brozman stated that "my decision in *Longfellow* was misguided, as was a decision in the district court ... which relied on *Longfellow*." *Id.* at 853–854 n. 1 (citation omitted). Judge Brozman continued, stating that where she "erred was in failing to differentiate between an adversary proceeding and a case. Section 1109 vests a party in interest with the right to be heard in a case, but says nothing of intervention in adversary proceedings. The word 'case' is a term of art, referring to the proceedings initiated by the filing of a bankruptcy petition." *Id.* The Court concurs with Judge Brozman that a court must differentiate between an adversary proceeding and a case.

■ The Court finds the reasoning of *Fuel Oil Supply and Terminaling v. Gulf Oil Corp.* the most persuasive and holds that 11 U.S.C. § 1109(b) does not provide an absolute right to intervene in an adversary proceeding. If the Creditors' Committee is to succeed in their motion, it must be entitled to intervene pursuant to Rule 7024(a)(2) of the Federal Rules of Bankruptcy Procedure.

Although not entitled to intervention under 11 U.S.C. § 1109, the creditors' committee could still intervene in the above-styled adversary proceeding if they qualify under Rule 7024(a)(2) of the Federal Rules of Bankruptcy Procedure. Rule 7024(a)(2) provides:

**2.** A person may seek to intervene in the case under the Code or in an adversary proceeding relating to the case under the Code. Intervention in a case under the Code is governed by Rule 2018 and intervention in an adversary proceeding is governed by this rule. **Intervention in a case and intervention in an adversary proceeding must be sought separately.** Fed.R.Bank. Proc. 7024 advisory committee's note (emphasis added).

Upon timely application anyone shall be permitted to intervene in an action:

(2) when an applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed.R.Bank.P. 7024(a)(2)

Courts interpret Rule 7024(a)(2) to require a prospective intervenor to pass four tests to intervene of right. First, the application to intervene must be timely filed. Second, the applicant must have an interest relating to the property or transaction which is the subject of the action. Third, the applicant must be so situated that disposition of the action, as a practical matter, may impede or impair his ability to protect that interest. Finally, the applicant must demonstrate that his interest is represented inadequately by the existing parties to the suit. *Gleason v. Commonwealth Continental Health Care (In re Golden Glades Regional Medical Center, Ltd.)*, 147 B.R. 813, 816 (Bankr.S.D.Fla.1992) (citing *Athens Lumber Co. v. Federal Election Commission*, 690 F.2d 1364, 1366 (11th Cir.1982). All of these requirements must be met in order to intervene.

■ The Committee's application is not timely. This litigation started in August of 1993 in state court and was referred to this Court on January 5, 1994. From January 5, 1994 until April of 1995 the Committee showed little or no interest in this proceeding. The parties to this adversary proceeding engaged in extensive discovery and negotiation during this litigation. They analyzed the claims, the likelihood of recovery, including the attendant expenses, and came to settlement agreeable to all involved. Only after the parties submitted their agreement for Court approval did the Committee take any action. Although the word timely as used in Rule 7024 has a fluid nature, the Committee's motion is not timely under any standard.

The Committee does arguably have an interest in the outcome of this litigation. Any property recovered by the estate means a larger disbursement to the general unsecured creditors. However, this interest may be illusory as CIT is by far the largest unsecured creditor and the lion's share of any recovery would accrue to its benefit.

Finally, the Committee has failed to show that its interests are not being adequately represented by the existing parties to the suit. In the case of *Kowal v. Malkemus (In re Thompson)*, 965 F.2d 1136 (1st Cir.1992), the First Circuit gave an in depth analysis of the "inadequate representation" arm of Rule 24(a)(2). First, the court noted that "the burden of demonstrating inadequate representation remains with the putative intervenor throughout." *Id.* at 1142. This burden "is at its most onerous where an existing party is under a legal obligation to represent the interests asserted by the putative intervenor." *Id.* The court held that:

"[T]he putative intervenor must assert *concrete* facts which demonstrate that (1) the existing representation of the putative intervenor's interests is inhibited by the personal interests of the existing representative, (2) the existing representative and the opposing party are engaged in collusive activities, or (3) the existing representative has failed or refused to fulfill the fiduciary duty to protect the interests asserted by the putative intervenor."

*Id.* at 1143.

The Committee failed to assert any facts showing inadequacy of representation. The DIP is under a legal duty to represent the same interests as the Committee. The Debtor has been involved in this suit and has decided that there is no benefit to the estate in further pursuing this cause of action.

A creditors' committee may, in an appropriate case, institute an adversary proceeding against third parties on behalf of the bankruptcy estate or the debtor-in-possession. The right of an unsecured creditors' committee to pursue litigation on behalf of the estate is governed by the standard set forth in *In re STN Enterprises*, 779 F.2d 901 (2nd Cir1985). *First Alabama Bank v. Shel-*

*by Motel Group (In re Shelby Motel Group),* 123 B.R. 98 (N.D.Ala.1990).

Most bankruptcy courts that have considered the question have found an implied, but qualified, right for creditors' committees to initiate adversary proceedings in the name of the debtor in possession under 11 U.S.C. §§ 1103(c)(5) and 1109(b), ..., or in reliance on an implied continuation of creditors' committee powers under the pre–1978 Code.... These courts have allowed creditors' committees to initiate proceedings only when the trustee or debtor in possession unjustifiably failed to bring suit or abused its discretion in not suing to avoid a preferential transfer. We agree with these bankruptcy courts that 11 U.S.C. ss 1103(c)(5) and 1109(b) imply a qualified right for creditors' committees to initiate suit with the approval of the bankruptcy court.

If the committee presents a colorable claim or claims for relief that on appropriate proof would support a recovery, the district (or bankruptcy) court's threshold inquiry will still not be at an end. In order to decide whether the debtor unjustifiably failed to bring suit so as to give the creditors' committee standing to bring an action, the court must also examine, on affidavit and other submission, by evidentiary hearing or otherwise, whether an action asserting such claim(s) is likely to benefit the reorganization estate ...

The court's inquiries will involve in the first instance not only a determination of probabilities of legal success and financial recovery in event of success, but also a determination as to whether it would be preferable to appoint a trustee in lieu of the creditors' committee to bring suit (bearing in mind any fees imposed on the estate by such an appointment, the wishes of the parties, and other relevant factors) and the terms relative to attorneys' fees on which suit might be brought. The creditors who compose the committee may agree themselves to be responsible for all attorneys' fees, but if they would seek to impose such fees on other creditors or the chapter 11 estate, whether by contingent fee arrangement or otherwise, that would obviously affect the cost-benefit analysis the court must make in determining whether to grant leave to sue. Hence fee arrangements should not only be made a matter of record but should be carefully examined by the court as it makes that determination.

We do not mean to suggest that the court need undertake a mini-trial ..., to determine likelihood of success in such a suit or the attendant fees and expenses involved. But it should assure itself that there is a sufficient likelihood of success to justify the anticipated delay and expense to the bankruptcy estate that the initiation and continuation of litigation will likely produce. Of course, if the creditors' committee represents that its fee arrangement with its attorney will in no event impose a net burden on the bankruptcy estate (because the committee will pay the fee and seek reimbursement only out of any recovery), then the preliminary inquiry can be limited to ascertaining whether the proposed lawsuit has a colorable basis on which to proceed.

*In re STN Enterprises,* 779 F.2d 901, 904–906 (2nd Cir.1985) (citations omitted).

The Committee has failed to assure the Court that there is a sufficient likelihood of success to justify the anticipated delay and expense of further litigation. The parties to the original suit analyzed the claims and likelihood of recovery and submitted a settlement agreement based on their collective judgment as to the merits of the case. The Committee seeks to intervene or initiate further proceedings in the face of this. Further, the Committee and counsel for the Committee have made no representation that the fee arrangement will not impose a net burden on the estate, rather they clearly state that they do not know that any recovery will result.

The Committee does not meet the requirements for intervention under Rule 7024(a)(2) and is therefor not entitled to intervene in this adversary proceeding. Further, the

Committee failed to meet its burden of proof under the standard of *STN Enterprises* that the expected benefit of any further litigation outweighs the cost. An order consistent with this opinion will be entered.